**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **BRIAN JERMAINE DODSON** | ) | |
| **Petitioner,** | ) | |
| | ) | **Civil Action No. 1:16-cv-00060** |
| **v.** | ) | **Judge Campbell/Frensley** |
| | ) | |
| **SHAWN PHILLIPS, Warden,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION AND BACKGROUND

Petitioner, Brian Jermaine Dodson, an inmate incarcerated in the Tennessee Department of Corrections, has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U. S. C. § 2254. Docket No. 46. On July 27, 2018, this Petition was referred to the undersigned Magistrate Judge for report and recommendation on all dispositive motions. Docket No. 73.

Presently pending before the Court is the Petitioner's Amended Petition for Writ of Habeas Corpus. Docket No. 46. Respondent has filed an Answer arguing that the Amended Petition pleads no entitlement to the Writ. Docket No. 57. Petitioner has filed a Reply. Docket No. 62. Following the denial of Petitioner's Motion for Evidentiary Hearing (Docket No. 88) which was affirmed by the District Judge (Docket No. 92), the matter is now ripe for consideration.

For the reasons set forth below, the undersigned recommends that Petitioner's Amended Petition for habeas relief be **DENIED** and **DISMISSED WITH PREJUDICED**. The undersigned recommends that a Certificate of Appealability be **DENIED** as to all claims.

### II.      BACKGROUND

The Tennessee Court of Criminal Appeals summarized the evidence presented at trial as follows:

**STATE'S PROOF**

According to the State's proof at trial, cousins Kim Malone and Crystal McKee were stabbed around 3:30 or 3:45 a.m. on December 14, 2008, in an apartment at Parkview Manor Apartments in Maury County, Tennessee. As a result, the defendant was indicted for the first-degree premeditated murder of Malone and the attempted first-degree murder and aggravated assault of McKee.

Officer Michael Brian Gray of the Columbia Police Department testified that he was on duty on December 13, 2008, when he made a traffic stop of a speeding vehicle around 9:50 p.m. Brook Lee was driving the vehicle, and the defendant was the passenger. The defendant provided Officer Gray with two identification cards – one showing a Memphis address and one showing a Columbia address. Officer Gray's patrol car was equipped with video equipment, and, accordingly, the traffic stop was recorded.

Officer Gray recalled that the defendant was wearing a "blue and white checkered flannel jacket" at the time of the stop and then later described it as a "blue and black, checkered flannel coat." He noted that the defendant's clothes appeared to be clean and had no visible dirt or bloodstains on them. Because the defendant was wearing a toboggan-style hat, Officer Gray could not see his hair. However, he did see that the defendant had a "small beard." Officer Gray ultimately described that the defendant was wearing "a woolen white checkered jacket with a white or gray-colored undershirt. Black like dickie pants and a black toboggan[,]" and a blue bandana around his neck. Officer Gray noted that the blue lights of his patrol car cast a blueish sheen on the color of the clothes on the videotape. The defendant was searched during the traffic stop, and no knife was found on him.

Officer Sarah Howell with the Columbia Police Department testified that she was on patrol the night of the offenses and responded to a reported stabbing at Parkview Manor Apartments around 3:45 a.m. on December 14, 2008. The dispatch information was that a male and a female had been stabbed. Officer Howell pulled into the apartment complex and drove to the last building at the end of the drive where she saw a woman standing at the bottom of the stairs. . . . Officer Howell followed the woman to the apartment and initially stood right inside the doorway. The woman was in the middle of the living room on her knees, having trouble breathing and "seemed kind of like she was in shock." The woman also appeared as though she was "[p]ossibly" under the influence of a narcotic.

Officer Howell testified that the woman identified herself as Crystal McKee and said that her cousin, Kim Malone, was dead. When Officer Howell asked McKee where Malone was, McKee said that she was in the kitchen. McKee told Officer Howell that she had been in the back of the apartment cleaning a bedroom when she heard Malone ("the victim")screaming. McKee said that she walked into the living room and saw a black male, whom she knew as "Lok," with his hands around the victim. At that point, "Lok" left the victim alone and approached

McKee. He then proceeded to stab her with a long blade. McKee could not recall what "Lok" was wearing. Officer Howell asked McKee if the stabbing was related to "a drug deal gone bad," and McKee answered, "[N]o. It had something to do with whiskey," that "Lok" wanted her whiskey.

Adrian Walker, who was presently incarcerated in the Williamson County Jail on a probation violation for a theft conviction, testified that he was incarcerated with the defendant in early 2009 in the Maury County Jail. The two shared a cell together, during which time the defendant told him about a situation where two women who owed him $300 "got cut up . . . reasonably bad" and that it was "messed up." Walker said that the defendant told him that he had been preparing to go out of town for his birthday and "basically was going to collect the money," but the women did not have it. The defendant told him that he went to the home of a woman named Lena after the attack and changed his clothes at her house. The defendant also told him that the State did not have the knife. The defendant showed him black and white photographs of the murder scene and the two victims.

Walker testified that, on another occasion when he and the defendant were in the same cell in June 2009, the defendant showed him color photographs of the murder scene and told him that the State "had dropped the ball . . . because they picked up the dumpster and . . . [it] went into the trash container instead of . . . driving straight to the detective's office." When showing Walker the photographs, the defendant said that the women "got really messed up." The defendant mentioned to him several times that "it was just about 300 dollars." On cross-examination, Walker testified that he also saw photographs of a dumpster and a lot of trash but, when presented with the discovery photographs, he was unable to point to any photograph that showed a dumpster. On redirect examination, Walker testified that the reason he wrote a letter to the defendant while he was in the Williamson County Jail was "because [he] had been getting stress from certain groups of Crypt[1] individuals in [his] jail" and was trying "to save [him]self."

Officer Andre Martin with the Columbia Police Department testified that he was instructed to retrieve a dumpster from Parkview Manor Apartments on December 15, 2008, at 10:00 a.m. because officers believed the defendant had placed a bag inside that dumpster. Officer Martin went to the apartment complex with a garbage truck and a flatbed truck and instructed the driver of the garbage truck to pick up the dumpster in front of Building G and place it on the flatbed truck. Once on the truck, the dumpster was to be taken to the police department to be searched. Instead of following the instructions, however, the garbage truck emptied the dumpster into the garbage truck. Officers had to search through the contents of the garbage truck for a black plastic bag but did not find the bag they were looking for.

Detective Cory Cooper with the Columbia Police Department testified

---

[1] We have utilized the spelling found in the transcript, which we presume is phonetic. The correct spelling may be "Crip," which is a street gang.

that he reported to the crime scene around 4:00 a.m. on December 14, 2008, and was responsible for processing the scene, which included taking photographs and collecting evidence. Detective Cooper stated that his notes reflected that McKee told him her attacker was wearing "a blue flannel shirt, tan pants, pj-type[, and a] blue bandana."

Dr. Amy McMaster, qualified as an expert in the field of forensic pathology, testified that she performed the autopsy on the victim. Dr. McMaster noted that the victim suffered sixteen stab or cut wounds to various areas of her body. Dr. McMaster surmised that the stab wound to the left side of the victim's chest that injured the left lung and the four stab wounds to her back that injured her ribs, spine, and spinal cord would have been fatal.

Helen Blackman Hannah testified that she knew the defendant in December 2008, and he went by the nickname "Lok." She recalled that the defendant showed up at her house between 8:00 and 8:30 a.m. on December 14, 2008, and he was not wearing the "toboggan hat" that he normally wore and had shaved his mustache. She was not sure how much hair he had previously due to his always wearing a hat, but she observed that he did not have any hair on his head that morning. Asked if the defendant had any eyebrows that morning, Hannah said that she "d[id]n't remember seeing much . . . hair on his face at all that morning." She also noted that the defendant often wore a black or blue plaid jacket, and he was not wearing it that morning.

Detective Jeff Duncan with the Columbia Police Department testified that he was the lead detective in this case and responded to the scene shortly after 4:00 a.m. on December 14, 2008. Thereafter, he traveled to Vanderbilt Hospital to talk to Crystal McKee, who was coherent but "appeared to be still in shock." McKee gave him a description of what had happened and of her attacker. Detective Duncan learned of a traffic stop that occurred the night before and watched the videotape of the stop. He also spoke to Nathan Donovan due to Donovan's connection to the phone number that had made calls to the victim's phone. As a result of the police investigation, the defendant was developed as the suspect. The officers located the defendant's apartment, and Detective Duncan noted that it was approximately fifty yards from the victim's apartment. Officers executed a search warrant on the defendant's residence but did not discover the items they were looking for. They were eventually able to locate the defendant, and an examination of him revealed no evidence of cuts or bleeding. Detective Duncan directed the submission of numerous items to the lab for testing.

### Defendant's Proof

Agent Hunter Greene, a forensic scientist with the Tennessee Bureau of Investigation ("TBI") Crime Laboratory, testified that she examined items of evidence submitted in this case for latent fingerprints, and her examination failed to reveal the presence of any identifiable prints.

4

Cassandra Beavers, a forensic scientist with the TBI Crime Laboratory, testified that she tested both a white rock substance and a rock substance submitted in this case. Testing of one of the items did not indicate the presence of any controlled substance, but testing of the other item revealed the presence of cocaine base.

Agent Charles Hardy, a forensic scientist in the Swab and DNA Unit of the TBI Crime Laboratory, testified that he tested various samples submitted in this case for the presence of blood and DNA. Agent Hardy's testing revealed, among other things, that the defendant's DNA was not present in a sample of blood collected from the bathroom sink drain of his apartment. A sample of blood collected from the sofa in the defendant's apartment revealed a mixture of genetic material from at least three individuals, with a female being the major contributor to the mixture but the victim and McKee were excluded as the possible contributors. The defendant's DNA was not found on any blood samples collected from the victim's apartment, nor was the victim's or McKee's DNA found on any blood samples collected from the defendant's apartment. On cross-examination, Agent Hardy noted that there were three samples, two of which were blood samples, obtained from the victim's apartment from which he was unable to generate a DNA profile.

Johnnie Ruth Polk testified that she lived next door to the victim at Parkview Manor Apartments in December 2008. Polk stated that someone knocked on her door around 3:00 or 3:30 a.m. on December 14, 2008, and, when she answered it, she saw a girl named Crystal who informed her that the victim was dead. Polk could not tell if Crystal was hurt, and Crystal did not tell her that she was hurt.

Brook Lee testified that she lived at 320 Roberts Drive in the Parkview Manor Apartments in December 2008. Lee and the defendant were engaged at the time, and he stayed with her "from time to time." On December 13, she and the defendant left her apartment around 9:00 p.m. to get something to eat, but they ended up stopping at two different gas stations. After leaving the second gas station, they were pulled over by a police officer. Thereafter, sometime around 10:30 or 10:45 p.m., they went to a car wash. They finally went back to Lee's apartment around midnight.

Lee testified that, at her apartment, she and the defendant ate and watched a movie, which ended around 2:00 or 2:15 a.m. At some point, both Lee and the defendant fell asleep, but Lee was awakened around 3:00 a.m. when she heard the door open and discovered that the defendant was going outside. He told her that he was going to smoke and let the dog out, then he returned shortly thereafter. Once the defendant was back inside the apartment, Lee fell asleep again but woke up when she heard someone knocking on the door. Looking through the peephole, Lee saw that a woman named "Banks" who lived in the apartment complex was at the door, but Lee did not open it. The defendant asked who was at the door, and Lee

told him. A few minutes later, the defendant walked outside and was gone about fifteen minutes. It was approximately 3:30 a.m. at the time.

Lee testified that the defendant looked the same when he returned as he had when he left. He was wearing dark pants, a flannel shirt, and a jacket. She thought he also had on his toboggan hat and a do-rag. The defendant was not out of breath or excited and did not have any blood on him. Once back in the apartment, the defendant sat on the couch for fifteen minutes and then took a shower. Five minutes later, Lee heard sirens. When the defendant got out of the shower, Lee got into bed. The defendant put on his work clothes and joined her. Shortly thereafter, the defendant got up to get ready for work and left around 5:00 a.m. Lee noted that, when the defendant got out of the shower, he had shaved his head. He explained to her that growing out his hair was "'just too high maintenance[.]'" The defendant had also shaved his beard and eyebrows. Lee stated that she did not observe the defendant talking on the phone the entire time they were together that evening and early morning, aside from during the traffic stop.

Clifford Bowen, an assistant in counsel's law office, testified that he filed a request for discovery in this case on March 2, 2009, and that they would have received the discovery within a week after the request. He recalled that there were photographs in the discovery. He sent copies of the photographs to the defendant along with the rest of the discovery materials. He initially sent the defendant thumbnail-sized black and white photographs and then later sent him larger-sized color photographs. Bowen said that he was familiar with all 714 photographs and said there was no photograph of a dumpster with trash in it or a photograph of a garbage truck. On cross-examination, Bowen acknowledged that information concerning the dumpster was in the State's file, which he received because of open file discovery and passed along to the defendant. On redirect, Bowen stated that he did not send the defendant any photographs before January 22, 2009, as they had not received them at that time.

Darius Hawkins testified that he and the defendant were cell mates in the Maury County Jail from December 2008 until February 2009. Another inmate, Adrian Walker, was also in the cell with them for a one or two-week period in late January. Hawkins said that he never heard the defendant talking about his case. He also never saw Walker looking through the defendant's paperwork.

Officer Jason Dark with the Columbia Police Department testified that he was on the surveillance team assigned to observe the defendant's apartment on December 15, 2008. Around 7:30 or 8:00 that morning, a black male exited the apartment carrying a black plastic trash bag, which he placed in the dumpster. Officer Dark said that he was not able to identify the man.

Officer Paul McCormick with the Columbia Police Department testified that later in the day of the stabbing, he was in the area around the defendant's apartment and saw a "heavy-set dark-haired female," whom he believed to be the

defendant's girlfriend, holding a spray bottle of cleaner and a bottle of bleach.

Antonio Turentine testified that he was at the Parkview Manor Apartments in December 2008, the night before the stabbing incident, to attend a cookout for his cousin's birthday. Antonio's[2] cousin lived in the apartment above the defendant and his girlfriend. The cookout started around 5:00 or 6:00 p.m. and lasted until 2:00 or 2:30 a.m. When Antonio was leaving the party, he saw the defendant outside with a puppy, either rolling up the windows of his car or making sure his car was locked.

Randall Turentine testified that he used to "hang out" at Parkview Manor Apartments and remembered a time he attended a party there with his cousin, Antonio. Randall recalled that he saw the defendant sometime during that evening when "it was just getting dark" outside.

The defendant testified that he lived with his girlfriend, Brook Lee, at 320 Roberts Drive in December 2008. Early in the evening of December 13, 2008, the defendant was alone at the apartment, so he stopped by a party that was going on in the apartment upstairs and talked to some people, specifically the "Turentine boys." Around 7:00 or 8:00 p.m., the defendant and Lee left the apartment and "rode around . . . contemplating . . . where [they] wanted to go." They eventually decided to go to Nashville but were pulled over by the police before heading in that direction. After the traffic stop, they went to a car wash and then decided to return to Lee's apartment because it was around midnight.

The defendant testified that, back at the apartment, he turned up the heat and took off his flannel jacket and hat. Lee prepared dinner, and the two sat down to watch a movie around 12:15 or 12:30 a.m. After they finished watching the movie, there was a knock on the door. Lee went to the door and saw that it was Ms. Banks, who also lived in the complex, at the door. The defendant explained that Ms. Banks was an elderly lady who sometimes came over to ask for cigarettes.

The defendant testified that, around 3:10 or 3:15 a.m., he left the apartment to take his puppy out and go to his car to get his cigarettes and have a smoke. He estimated that he was outside for about five minutes before he went back in. The defendant explained that it was not unusual for him to be outside at that hour because he worked for a company in Nashville and had to be at work at 6:00 a.m. As such, he would typically get up around 3:30 or 4:00 a.m. to get ready for work.

The defendant testified that he went back outside five to ten minutes later, around 3:30 or 3:40 a.m. He let the puppy out again and went to his car to roll up the windows and lock the door. When he return to the apartment, he sat on the couch and watched television for fifteen to twenty minutes. After that, he shaved

---

[2] Two of the witnesses have the same last name and will be referred to by first name only at times for clarity. We mean no disrespect by this practice.

his head, beard, and eyebrows and took a shower.

The defendant testified that, while he was in the shower, Lee came in and told him that there had been a stabbing or shooting in the apartment complex. The defendant told her to stay away from the window in case someone was outside shooting. After his shower, the defendant dressed in lounge clothes and got into bed. He woke up around 5:00 or 5:30 a.m., ate breakfast, and left the apartment.

The defendant testified that he had a cell phone at the time with the number 615-838- 9536, which was the cell phone he was talking on during the traffic stop. However, the phone was somehow misplaced after the traffic stop, so he did not have it when they returned to 320 Roberts Drive that night. He speculated that he may have left the phone at the car wash or at a store they stopped by afterwards.

The defendant testified that he met the victim in the summer of 2008 when she was having car trouble, and he helped start her car. He knew that the victim lived in an apartment in the building adjacent to his girlfriend's building and talked to her on the phone and visited her apartment occasionally. He had seen Crystal McKee before but had never had a conversation with her. The defendant denied going to the victim's apartment or calling her on the night of the incident. The defendant said that he had not received any discovery photographs in January 2009 – the first time he and Adrian Walker were housed together in the Maury County Jail.

On cross-examination, the defendant recalled that he showed Adrian Walker some black and white photographs of the crime scene but said that he did not recall showing Walker any color photographs. However, he said that he did not tell Walker that the women were stabbed because they owed him $300 for drugs. The defendant admitted that he received a copy of his case file from counsel and was aware of the situation regarding the contents of the dumpster being lost, but he denied mentioning anything about that to Walker.

**Rebuttal Proof**

Brook Lee denied knowing the defendant to be a drug dealer or ever telling Detective Cooper that the defendant sold crack.

Detective Cooper testified that he interviewed the defendant, and the defendant told him that "Lok" was not his nickname. The defendant denied making any telephone calls to the victim within the day or two leading up to her murder. Detective Cooper said that Brook Lee told him when he interviewed her that the defendant sold crack cocaine.

After the conclusion of the proof, the jury convicted the defendant of the first-degree premeditated murder of Kim Malone and the attempted first-degree murder and aggravated assault of Crystal McKee.

8

Docket No. 31-23, at pp. 2-11.

### III.  PROCEDURAL HISTORY

On or about March 19, 2010, Petitioner was convicted of one count of first-degree premediated murder, attempted first-degree murder, and aggravated assault. Docket No. 31-1, p. 109-113. Petitioner was sentenced to life imprisonment. Docket No. 31-2 at 1. The Petitioner filed an appeal as of right to the Tennessee Court of Criminal Appeals which affirmed his conviction and sentence. Docket No. 31-23. The Tennessee Supreme Court denied permission to appeal. Docket No. 31-25.

Petitioner subsequently filed a pro se petition for post-conviction relief in Maury County Circuit Court which was denied. Docket No. 31-26. The Petitioner filed a  post-conviction appeal of right to the Tennessee Court of Criminal Appeals which affirmed the decision of the trial court. Docket No. 32-1. The Tennessee Supreme Court denied permission to appeal on  April 6, 2016. Docket No. 31-37.

Petitioner initially brought this habeas petition pro se on July 20, 2016. Docket No. 1. The Federal Public Defender was subsequently appointed as counsel on January 5, 2017. Docket No. 39. On February 9, 2017, Petitioner, through counsel, filed an Amended Petition seeking habeas corpus relief. Docket No. 46.

### IV.  ISSUES PRESENTED FOR REVIEW

In the instant Amended Petition, the Petitioner raises 20 separate claims for relief:

1.      In violation of the Sixth and Fourteenth Amendments (including the violation of due process and equal protection), the prosecution struck Hispanic prospective juror Adolfo Viramontes (Juror 590, See R. 31-1, p. 85, PageID #192) in violation of *Batson v. Kentucky*, 476 U. S. 79 (1986) and *Foster v. Chatman*, 578 U. S. 1023, 136 S. Ct. 1737 (2016).

2.      In violation of due process of law under the Fourteenth Amendment,

9

the jury was not instructed on the meaning of reasonable doubt upon the conclusion of the evidence (R. 31-12, p. 124 *et seq*., PageID #1603 *et seq*.) but instead instructed merely to convict "as you think justice and truth dictate"(Id., p. 152, PageID #1631), all of which relieved the prosecution of proving Petitioner's guilt of all charges beyond a reasonable doubt.

3. In violation of due process under the Fourteenth Amendment, the trial court instructed jurors that the law presumes witnesses tell the truth (R. 31-7, p. 65, PageID #802) which thereby required jurors to believe the prosecution's witnesses and lessened the prosecution's burden of proof under *Sandstrom v. Montana*, 442 U. S. 510 (1979), especially where this instruction required the jury to credit and presume true the testimony of Crystal McKee identifying Petitioner as the assailant and to credit and presume true the testimony of snitch Adrian Walker, who made various claims about what Petitioner supposedly told Walker about the offense.

4. In violation of due process of law under the Fourteenth Amendment, the prosecution knowingly presented false testimony, and/or withheld exculpatory evidence before trial and/or at trial and/or before and during the motion for new trial.

5. The prosecution violated Petitioner's Fifth and Sixth Amendment rights and *Massiah v. United States*, 377 U. S. 201 (1964) by using Adrian Walker to secure alleged statements from Petitioner after his right to counsel attached (but without any knowing, intelligent, and voluntary waiver of the right to counsel) and then using those alleged statements to Walker against Petitioner at trial.

6. In violation of due process under the Fourteenth Amendment, Crystal McKee's courtroom identification of Petitioner as the assailant was unreliable and unduly suggestive, especially where Ms. McKee was under the influence of cocaine or other drugs at the time of the offense, she admitted to Kendall Jordan that she was "so messed up" she couldn't identify who committed the offense, she told officers at the scene that she could not identify the assailant's clothing, and the courtroom atmosphere was inherently and unduly suggestive, leading to an unreliable and improper identification of Petitioner at trial as the assailant.

7. In violation of due process of law under the Fourteenth Amendment, Petitioner was denied an instruction on alibi even though that was his theory of defense (including instruction on the legal principles of alibi as well as the fact that this was the defense theory and explaining alibi as it related to the facts), he was required to provide notice of alibi before trial, and where evidence at trial from Petitioner, Brook Lee, Antonio Turentine, and even Columbia Police Department Sergeant Cash, who testified that Petitioner told him that he was at home and went to sleep around midnight and left for work at 5:30 a.m. or 6:00 a.m. (R. 31-12, p. 61, PageID #1640), but the offenses occurred elsewhere around 3:30 a.m. to 4:00

10

a.m.

8.      In violation of due process under the Fourteenth Amendment, the prosecution at closing argument made inflammatory, false, misleading, and/or improper arguments that denied Petitioner a fair trial, including, but not limited to arguments that: an unfair and inflammatory statement that the defense was "dragging bloody rags across the trails of justice;" Petitioner's clothes were lost in a dumpster; Petitioner "bragged" to Adrian Walker that the state had no proof against him; Petitioner "bragged" to Walker about harming the victims; Walker was "not happy" to hear about the victims' injuries; Petitioner put the victim on the floor like a piece of garbage; Petitioner talked to people after he allegedly lost his phone.

9.      In violation of the Sixth Amendment and due process under the Fourteenth Amendment, the trial court allowed witness Adrian Walker to testify about alleged gang activity, and allowed Walker to testify when the prosecution failed to disclose an exculpatory November 20, 2009 interview of Walker by the Tennessee Bureau of Investigation, which demonstrated that Walker had been intimidated by the T.B.I. agent who told Walker, *inter alia*, that she would share personal information about his family with Petitioner, that Petitioner was affiliated with a gang, and that Petitioner considered Walker a snitch.

10.      In violation of due process under the Fourteenth Amendment, the trial court allowed the admission of evidence of Petitioner's alleged sale of crack cocaine (R. 31-12, p. 50, PageID #1529) which the jury was able to use as substantive evidence of wrongdoing and guilt here, without any limiting or cautionary instruction that such evidence either was not properly admitted at all, or could only be used to impeach Brook Lee.

11.      In violation of the Sixth Amendment and the Fourteenth Amendment's due process requirements, the trial court allowed Counts II and III of the indictment, which originally alleged that the offenses of attempted murder and aggravated assault occurred in Lawrence County, to be amended to allege (without presentation to the grand jury) that such offenses occurred in Maury County.

12.      In violation of the Fourteenth Amendment, there was insufficient evidence to support Petitioner's convictions for first-degree murder, attempted first-degree murder, and aggravated assault, especially where the jury was instructed that it had to eliminate all reasonable hypotheses except Petitioner's guilt. See R. 31-7, p. 65, PageID #802.

13.      In violation of due process under the Fourteenth Amendment, the prosecution introduced evidence of Petitioner's prior convictions for aggravated assault in 1999 that prejudiced the jury against Petitioner.

14.      In violation of due process and the right to present a complete

defense under the Sixth and Fourteenth Amendments, the trial court excluded a voice stress test of defense witness Brook Lee (See R. 31-11, p. 94, PageID #1403) which established her credibility and the viability of Petitioner's defense.

15.     In violation of the Sixth and Fourteenth Amendments, Petitioner was indicted by a grand jury from which African-Americans and Hispanics were systematically underrepresented and/or excluded, including as foreperson and for which women had also been excluded as foreperson for many years before Petitioner's indictment:

16.     In violation of the Sixth and Fourteenth Amendments, Petitioner was denied the effective assistance of trial counsel at trial and on the motion for new trial. Counsel's performance was deficient, and there is a reasonable probability that, had counsel performed effectively, Petitioner would not have been convicted of first-degree murder, attempted first-degree murder and/or aggravated assault and/or would have received a new trial. Trial and/or motion for new trial counsel were ineffective in the following ways, *inter alia*:

17.     In violation of the Sixth and Fourteenth Amendments, Petitioner was denied the effective assistance of appellate counsel. Counsel's performance was deficient, and there is a reasonable probability that, had counsel performed effectively, Petitioner would have secured relief on direct appeal and received a new trial on the charges of first-degree murder, attempted first-degree murder and/or aggravated assault. Appellate counsel was ineffective in the following ways, *inter alia*:

18.     In violation of the Fourteenth Amendment, Petitioner was not competent to stand trial, in that he lacked sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and/or lacked a rational or factual understanding of the proceedings against him, and counsel failed to fully investigate and present evidence of Petitioner's competency and mental health and mental state and existence of brain dysfunction, and history of auditory hallucinations, especially as those factors related to and showed the lack of *mens rea* for first-degree murder, and Petitioner was prejudiced thereby, in violation of the Sixth Amendment.

19.     Petitioner also hereby incorporates all claims raised in his initial uncounseled habeas petition (R. 1), which he incorporates in its entirety into this paragraph, to ensure that no claims are in any way unintentionally overlooked or not presented to this Court for review.

20.     In violation of due process under the Fourteenth Amendment, the cumulative effect of all errors at trial and/or on appeal (identified in ¶¶1-19 *supra*) deprived Petitioner of a fair trial and/or fair direct appeal whose result was fair and reliable.

Respondent answers that Petitioner is not entitled to relief as to each exhausted ground for relief "because the state appellate decisions do not unreasonably apply clearly established federal law and are not based on an unreasonable determination of the established facts." Docket No. 57, pp. 1-2. Respondent argues that the vast majority of Petitioner's claims are procedurally defaulted as not properly exhausted in that Petitioner has failed to plead sufficient cause nor proven actual prejudice to excuse the defaults. *Id.* Finally, regarding Petitioner's ineffective assistance claims, there is insufficient basis to excuse the defaults and that they are either unsubstantial or barred from review. *Id.*

In his Reply, Petitioner maintains he is entitled to relief on each of his claims. Docket No. 62. Petitioner asserts he was "not required to anticipatorily rebut any affirmative procedural default defense raised for the first time by Respondent in the Answer." *Id.* at p. 1. Petitioner argues that his claims are either not defaulted or he will overcome the defaults under *Martinez* or otherwise and ultimately establish his entitlement to relief on the merits of his exhausted and/or his defaulted claims. 566 U. S. 1 (2012),

## IV. LAW AND ANALYSIS

### A. Standard of Review

Because Petitioner filed his application for habeas relief after April 24, 1996, his amended petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 214 (1996). The AEDPA amended the standard for granting habeas relief as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an

13

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U. S. C. § 2254(d).

The "contrary to" and "unreasonable application" clauses have independent meaning. *Williams v. Taylor*, 529 U. S. 362, 404 (2000). With regard to the former, a state court's decision is "contrary to" clearly established law if it " 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.' " *Mitchell v. Esparza*, 540 U. S. 12, 15-16 (2003), *quoting Williams*, 529 U. S. at 405-06. As to the latter, "an *unreasonable application* of federal law is different from an *incorrect application* of federal law." *Williams*, 529 U. S. at 410 (emphasis added). A federal habeas court making an " 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively unreasonable*." *Id.* at 409 (emphasis added). The phrase "clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta" of Supreme Court decisions at the time of the relevant state court decision. *Id.* at 412.

To obtain habeas relief from a federal court, a habeas petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington v. Richter*, 562 U. S. 86, 103 (2011). Where state courts have made factual determinations regarding issues presented for federal habeas corpus review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that

14

presumption of correctness by clear and convincing evidence. 28 U. S. C. § 2254(e)(1). Under the AEDPA, the purpose of habeas review is to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U. S. 685, 693 (2002).

### B.    Petitioner's Procedurally Defaulted Claims

Before a federal court may review a claim raised in a habeas petition, it must be determined whether the petitioner has exhausted the remedies available in state court. 28 U. S. C. § 2254(b)(1). A federal court shall not grant an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a state court unless the applicant has exhausted the remedies available in courts of the state, the applicant has no state corrective process, or the process is ineffective to protect the rights of the applicant. 28 U. S. C. § 2254(b)(1)(A)-(B).

To properly exhaust available state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U. S. 838, 845 (1999).

In the State of Tennessee, a petitioner need not file an application for permission to appeal to the Tennessee Supreme Court to exhaust all state remedies; an appeal to the Tennessee Court of Criminal Appeals is sufficient. Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F. 3d 398, 402 (2003) (holding that Rule 39 removes Tennessee Supreme Court review as an antecedent for federal habeas review). Further, in order to properly exhaust a habeas claim in state court, "a petitioner must assert both the legal and factual basis for his or her claim." *Williams v. Anderson*, 460 F. 3d at 806. To satisfy this requirement, and avoid a procedural default, a petitioner's federal habeas claim must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory. *Carter v. Mitchell*, 829 F. 3d 455, 461 (6th Cir. 2016); *Wong v. Money*,

15

142 F. 3d 313, 322 (6th Cir. 1998).

The procedural default doctrine provides that if a petitioner fails to satisfy independent and adequate state procedural requirements, he forfeits his right to present his claims on federal habeas review. *Coleman v. Thompson*, 501 U. S. 722, 732 (1991). A procedural default can occur in one of two ways. First, a procedural default may occur if the state court actually "relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U. S. 320, 327 (1985). Second, if a petitioner fails to properly exhaust a claim in state court, and the claim can no longer be raised in state proceedings because of a failure to follow state procedure for presenting such a claim, the claim is technically exhausted, but a petitioner is not automatically entitled to present his claim on federal habeas review, as his claim is procedurally defaulted. *Woodford v. Ngo*, 548 U. S. 81, 126 (2006).

In those cases, in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of any such claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U. S. at 750. Whether a petitioner has established cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U. S. 478, 488 (1986). To establish actual prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U. S. 152, 170 (1982) (emphasis original). With regard to a fundamental miscarriage of justice, a petitioner must show

"that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U. S. 383, 399 (2013) (internal quotation marks omitted), *quoting Schlup v. Delo*, 513 U. S. 298, 327 (1995). For a petitioner to "pass through the gateway" and be permitted to argue the merits of his defaulted claims, he must show "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Id.* at 401 (internal quotation marks omitted), *quoting Schlup*, 513 U. S. at 316.

**1. Claims 1-8, 10-11, 13-15, 16a-16l, 16n-16t, 17-18, and 20 are procedurally defaulted.**

Petitioner failed to raise claims 1-8, 10-11, 13-15, 16a-16l, 16n-16t, 17-18, and 20 before the Tennessee Court of Criminal Appeals, and Tennessee law now bars proper exhaustion in the state courts. Under Tennessee law, these claims would be barred as untimely pursuant to the one-year statute of limitations. Tenn. Code Ann. § 40–30–102(a). Tennessee law also limits a petitioner to filing only one petition for post-conviction relief. Tenn. Code Ann. § 40–30–102(c).

Additionally, the waiver statute, Tenn. Code Ann. § 40–30–106(g), provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Petitioner has therefore procedurally defaulted these claims.

In his amended petition, Petitioner neither acknowledges that these claims have been defaulted, nor argues that the defaults should be excused. *See* Docket No. 46. However, Petitioner sought an evidentiary hearing invoking *Martinez* and *Edwards* to establish cause overcome procedural default on a number of his claims. Docket No. 62. In his Reply, Petitioner contends that he was under no obligation to anticipatorily rebut the affirmative defense of procedural default, and that he can overcome the default of those claims on several different theories. Docket No. 62.

17

For the reasons discussed below, Petitioner has failed to demonstrate the cause and actual prejudice or fundamental miscarriage of justice necessary to overcome the procedural default of these claims.

### a.     Anticipatory Pleading to Overcome Procedural Default Affirmative Defense

As a preliminary matter, Petitioner argues that he was under no obligation to anticipatorily rebut the affirmative defense of procedural default. Docket No. 62. Petitioner is correct that procedural default is an affirmative defense, and that the burden is on the government to raise a procedural default issue. *Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) (holding that the government, in order not to waive the defense, "was required to assert procedural default as an affirmative defense in its responsive pleading"). A petitioner is not required to answer the defense until after the government asserts it. *Vanwinkle v. United States*, 645 F. 3d 365, 370 (6th Cir. 2011). Petitioner therefore appropriately first addressed Respondent's assertion of procedural default in his reply.

### b.     Amended Petition Claims 1 and 16a – *Batson* and Ineffective Assistance of Counsel for Failing to Raise *Batson* Claim

Petitioner asserts in his Amended Petition for Writ of Habeas Corpus that his Sixth and Fourteenth Amendment rights were violated when "the prosecution struck Hispanic prospective juror Adolfo Viramontes . . . in violation of *Batson v. Kentucky*, 476 U. S. 79 (1986) and *Foster v. Chatman*, 578 U. S. 1023, 136 S. Ct. 1737 (2016)." Docket No. 46, p. 2 (emphasis original). Petitioner claims his trial counsel was ineffective for failing to object to the alleged *Batson* violation. *Id.* at 10.

Respondent argues in his Answer that Petitioner is not entitled to relief on this ground because his claim is procedurally defaulted, and Petitioner cannot overcome that procedural

18

default. *See* Docket No. 57, pp. 5-7. Respondent asserts, "Petitioner cannot prove his *Batson* claim" because his allegation is "conclusory," "which does not provide Petitioner habeas relief." *Id.* at 6. Respondent argues that, had the issue been raised by Petitioner at trial, "the State could have argued that it peremptorily struck Mr. Viramontes because of his confusion regarding the burden of proof and not because of racial animus." *Id.* (citing *Purkett v. Elem*, 514 U. S. 765, 767 (1995)).

In relation to Petitioner's ineffective assistance claim, Respondent argues that Petitioner is not entitled to relief because the *Batson* "challenge likely would not have succeeded." *Id.* at 28. Respondent contends that "trial counsel did not provide deficient performance and Petitioner suffered no prejudice." *Id.* Respondent contends that "[t]he claim is unsubstantial and should be accordingly dismissed with prejudice." *Id.*

The Equal Protection Clause prohibits a prosecutor from using peremptory challenges to remove an otherwise qualified prospective juror from the petit jury solely on the basis of race. *Batson*, 476 U. S. at 84. *Batson* provides a three-step inquiry to determine whether a peremptory challenge was based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U. S. 472, 476-77 (2008) (internal quotations omitted) (quoting *Miller-El v. Cockrell*, 537 U. S. 322, 328-29 (2003)).

To establish a prima facia case, and thus satisfy step one of *Batson*, the party challenging the peremptory strike must demonstrate: "(1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts,

19

along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *United States v. McAllister*, 693 F. 3d 572, 579 (6th Cir. 2012). A defendant may also raise a *Batson* violation even if he or she does not belong to the same cognizable racial group as the excluded juror. *Id.* at 579 n.2 (citing *Powers v. Ohio*, 499 U. S. 400, 402 (1991)).

During voir dire at Petitioner's trial, the following exchange between the State and the prospective juror took place:

> GENERAL COOPER: Mr. Veramontez, when you were out in the panel earlier, did you hear some questions that were being asked?
>
> JUROR NUMBER 8: Yeah.
>
> GENERAL COOPER: Okay, did you have any confusion about the section regarding the burden of proof and how a criminal trial is different from a civil trial?
>
> JUROR NUMBER 8: Yes.
>
> GENERAL COOPER: Have you ever been on a jury trial before?
>
> JUROR NUMBER 8: No.

Docket No. 31-6, pp. 64:24-25 – 65:1-11.

Unlike the express references to race included in the prosecutions file at issue in *Foster v. Chatman*, 136 S. Ct. 1737 (2016), Petitioner cites to no evidence that the prosecution struck the prospective juror based on his race. Even after allowing Petitioner discovery as to the District Attorney notes of jury selection (Docket No. 75, p. 16), Petitioner's allegations remain conclusory. Also, as the Court previously held, even if Petitioner could make out a *prima facie* case under *Batson*, the prospective juror's confusion would have allowed the State to provide a race-neutral justification for excluding him. Docket No. 88, p. 11. Therefore, the underlying ineffective-assistance-of-counsel-claim is not substantial. The state record is sufficient to test Petitioner's

claims against the demands of the Sixth and Fourteenth Amendments. The conclusory allegation that Mr. Viramontes was improperly struck is the only evidence that Petitioner provides to support this claim and there is no factual support for this allegation in the record. Petitioner therefore fails the first step of the *Batson* inquiry, and cannot excuse the procedural default of this claim.

### c. Amended Petition Paragraphs 2 and 16j – Reasonable Doubt Jury Instruction and Ineffective Assistance of Counsel for Failing to Challenge the Instruction

Petitioner next claims in his Amended Petition that his Fourteenth Amendment Due Process right was violated when "the jury was not instructed on the meaning of reasonable doubt upon the conclusion of the evidence . . . but instead instructed merely to convict 'as you think justice and truth dictate, . . . reliev[ing] the prosecution of proving Petitioner's guilt of all charges beyond a reasonable doubt." Docket No. 46, p. 2 (citing Docket No. 31-12, p. 124). Petitioner also claims that he received ineffective assistance of counsel based on his trial counsel's failure to object to the charged instruction. *Id.* at 15.

Respondent argues in his Answer that "the record shows that Petitioner suffered no prejudice." Docket No. 57, p. 7. Respondent supports this argument by asserting Petitioner's claim "constitutes a mere conclusory allegation that does not form the basis for relief from a procedural default." *Id.* (citation omitted). Respondent contends the instruction language quoted by Petitioner "has been held constitutional because the instruction 'relates to the verdict representing the considered judgment of each juror.'" *Id.* (quoting *Morris v. Bell*, No. 07-1084, 2011 WL 7758570 at *36 (W. D. Tenn. Sept. 29, 2011, *rev'd on other grounds, Morris v. Carpenter*, 802 F. 3d 825 (6th Cir. 2015). Respondent states that "contrary to Petitioner's contention, the trial court did instruct the jurors on the full definition of reasonable doubt in its preliminary instructions." *Id.* (citing Docket No. 31-7, pp. 61-62). Respondent contends that "Petitioner fails to show prejudice based on this claim" and that "the Court should dismiss the

21

claim as defaulted with prejudice." *Id.*

As to Petitioner's ineffective-assistance-of-counsel claim, Respondent contends that "[t]he underlying *Strickland* claim is unsubstantial because trial counsel's performance did not prejudice Petitioner." *Id.* at 33. Respondent states that federal law "does not require a trial court to define reasonable doubt as a matter of course." *Id.* (citing *Victor v. Nebraska*, 511 U. S. 1, 5 (1994). Respondent argues that "[p]ursuant to *Victor*, the fact that the trial court did not instruct the jury on 'reasonable doubt' at the conclusion of evidence does not matter because the jury was instructed on 'reasonable doubt' at the start of the trial." *Id.* (citation omitted). Respondent contends that "Petitioner is not entitled to present this claim to the Court, and this defaulted claim should be dismissed with prejudice." *Id.* at 34.

Petitioner's allegations would not allow him to overcome procedural default to get to the merits of his claims. First, the state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro v. Landrigan*, 550 U. S. at 474. The trial court instructed the jury as to its burden to find Petitioner guilty beyond a reasonable doubt. *See* Docket No. 31-1, pp. 88, 107; *see also* Docket No. 31-12, p. 152, 152. The "as you think justice and truth dictate" instruction has been held constitutional when it relates "to the verdict representing the considered judgment of each juror." *Morris*, No. 07-1084-JDB, 2011 WL 7758570, at *36, *rev'd on other grounds*, *Morris v. Carpenter*, 802 F. 3d 825 (6th Cir. 2015). The trial court gave the "as you think justice and truth dictate" instruction in relation to the juror's independent judgment in reaching a verdict. *See* Docket No. 31-12, p. 152. The court later instructed the jury to follow the reasonable doubt standard in making its findings of guilt. *See Id.* at 153. Additionally, the constitution only commands that "'taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.'" *Victor*, 511 U. S. at 5 (quoting *Holland v. United States*,

22

348 U. S. 121, 140 (1954)).  Thus, Petitioner's allegations do not overcome procedural default and prove the merits of his claim.

> **d.    Amended Petition Paragraphs 3 and 16i – Witness Credibility Jury Instruction and Ineffective Assistance of Counsel for Failing to Challenge the Instruction**

Petitioner next claims in his Amended Petition that his Fourteenth Amendment Due Process right was violated when "the trial court instructed jurors that the law presumes witnesses tell the truth . . . which thereby required jurors to believe the prosecution's witnesses and lessened the prosecution's burden of proof under *Sandstrom v. Montana*, 442 U. S. 510 (1979), especially where this instruction required the jury to credit and presume true the testimony of Crystal McKee identifying Petitioner as the assailant and to credit and presume true the testimony of snitch Adrian Walker, who made various claims about what Petitioner supposedly told Walker about the offense." Docket No. 46, p. 2-3. Additionally, Petitioner contends that he received ineffective assistance of counsel based on trial counsel's failure to object to the instruction. *Id.* at 15.

Respondent argues in his Answer that "Petitioner cannot show prejudice to excuse" his procedural default.  Docket No. 57, p. 8.  Respondent states, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Id.* (citing *Cupp v. Naughten*, 414 U. S. 141, 146-47 (1973)).  Additionally, Respondent states that a Petitioner can only obtain relief based on a "presumption-of-truthfulness-of-the-witness instruction" where "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp*, 414 U. S. at 146-47).  Respondent asserts that "[s]uch a jury instruction does not deny a Petitioner due process based on impermissible burden-shifting when the trial court properly instructs the jury regarding the presumption of innocence and the State's duty to prove guilt beyond a reasonable doubt." *Id.* (quoting *Cupp*, 414

U. S. at 147; *Lundy v. Campbell*, 888 F. 2d 467, 480 (6th Cir. 1989)).  Respondent argues, "this defaulted claim cannot demonstrate prejudice and thus the default should not be excused."  *Id.*

In response to Petitioner's ineffective assistance of trial counsel claim, Respondent contends that trial counsel was not ineffective because "the instruction does not violate due process[.]"  Docket No. 57, p. 33 (citing *Cupp*, 414 U. S. at 146-47).  Respondent also contends that the instruction did not violate state law either.  *Id.* (citing *State v. Glebock*, 616 S. W. 2d 897, 906 (Tenn. Crim. App. 1981)).  Respondent argues that "[t]his defaulted claim lacks substantiality and should be dismissed as defaulted."  *Id.*

The Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt.  *In re Winship*, 397 U. S. 358, 368 (1970).  When assessing the effect of jury instructions on the validity of a conviction, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Cupp*, 414 U. S. at 146-47.  The determination depends on whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Id.* at 147. The trial court instructed the jury as Petitioner alleges, but the Court also stated that "[y]ou are free to believe all, none or part of any person's testimony."  *See* Docket No. 31-1, p. 89.

Petitioner's allegations would not allow him to overcome procedural default to get to the merits of his claims.  First, the state record is sufficient to determine the merits of Petitioner's claim.  *See Schriro*, 550 U. S. at 474. Petitioner cites to *Sandstrom v. Montana*, 442 U. S. 510 (1979) as support for his contention that the above instruction violated his constitutional rights.  In *Sandstrom*, the Court found unconstitutional a jury instruction stating "the law presumes that a person intends the ordinary consequences of his voluntary acts."  *Id.* at 513. The instruction relating to the burden of proving an element of the offense at issue in *Sandstrom* is unlike the instruction

24

given at Petitioner's trial which relates only to the truthfulness of the witnesses. Petitioner does not explain how the allegedly erroneous instruction, taken in the context of the entire instruction given, violates his constitutional rights. For example, the quoted passage also instructed the jury they were each "free to believe all, none or part of any person's testimony." Docket No. 31-1, p. 89. Petitioner cannot prove cause under *Martinez* or *Edwards*. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

> e.    **Amended Petition Paragraph 4 – Failure to Disclose Exculpatory and Material Evidence; Presentation of False Evidence.**

Petitioner next makes several allegations that the prosecution withheld exculpatory and material evidence from the defense. *See* Docket No. 46, pp. 3-5. Acknowledging that most of the allegations contained in that claim are procedurally defaulted in his Reply, Petitioner argues that he can overcome procedural default because his claim is meritorious. Docket No. 62, pp. 9-10 (citing *Apanovitch v. Houk*, 466 F. 3d 460, 474 (6th Cir. 2000).

Respondent contends Petitioner's allegations are conclusory, lack merit, and are procedurally defaulted. *See* Docket No. 57, pp. 9-16.

Petitioner's *Brady* claims primarily address the State's alleged withholding of exculpatory information related to the testimony of the surviving victim, Crystal McKee, including her alleged statement to Kenneth Johnson that she had been "drugged up" to the point that she did not know what had happened and thought she herself could have committed the crime or had some involvement with it. Docket No. 46, p. 3. There was also further information regarding her drug use and inconsistent statements about the events. *Id.* at pp. 3-5. Petitioner further contends the prosecution withheld exculpatory evidence regarding other individuals who may have been known by the name "Loc" as well as questions around the testimony of Adrian Walker. *Id.*

"Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *Strickler v. Greene*, the Supreme Court set out the three elements necessary to establish a *Brady* violation: "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." 527 U.S. 263, 28182 (1999). A *Brady* violation occurs only if the suppressed evidence is "material," meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U. S. 667, 682 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

The "cause" and "actual prejudice" requirements to excuse procedural default in the habeas context parallel two of the three elements of a *Brady* claim. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). With regard to the second element (suppression of evidence by the state), "a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Id.* With regard to the third element (prejudice), "prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes." *Id.* A *Brady* violation thus "implicitly constitutes a *per se* excuse ('cause' and 'prejudice') for procedural default in habeas review." *Apanovitch,* 466 F. 3d at 474, *citing Banks*, 540 U.S. at 691.

The Petitioner's claims are conclusory and, in any event, would not have resulted in a reasonable probability that the trial would have turned out differently based on the totality of the evidence. Further, the issues raised were well known to defense counsel who either pursued them

at trial or chose not to pursue them. Petitioner has failed to establish that any constitutional violations occurred and failed to show cause to excuse the procedural default of this claim.

### f. Amended Petition Paragraphs 5 and 16k – Fifth and Sixth Amendment Claims: *Miranda* and *Massiah*; Ineffective Assistance for Failing to Raise Claim

Petitioner next claims in his Amended Petition that his Fifth and Sixth Amendment rights were violated, including those under "*Massiah v. United States*, 377 U. S. 201 (1964)[,] by using Adrian Walker to secure alleged statements from Petitioner after his right to counsel attached (but without any knowing, intelligent, and voluntary waiver of the right to counsel) and then using those alleged statements to Walker against Petitioner at trial." *Id.* at 5-6. Petitioner also claims that he received ineffective assistance of trial counsel when his trial counsel "failed to investigate and present available proof . . . to establish that the prosecution violated Petitioner's Fifth and Sixth Amendment rights and *Massiah v. United States*, 377 U. S. 201 (1964)." Docket No. 46, p. 15-16.

Respondent contends in his Answer that "Petitioner merely speculates that Mr. Walker asked him incriminating questions, and this speculation is not enough to warrant relief." Docket No. 57, p. 17. Respondent asserts that "Petitioner does not have a right to counsel pursuant to the Fifth Amendment when he conversed with Mr. Walker." *Id.* Respondent asserts, "Walker was not even an undercover officer soliciting the information, and thus Petitioner possessed no right to counsel under the Fifth Amendment." *Id.* Respondent argues that "[t]his conclusory claim should be dismissed as defaulted." *Id.*

Respondent also contends that "Petitioner cannot excuse the default pursuant to the Sixth Amendment." *Id.* As support, Respondent states, "[t]he Supreme Court has held that a state violates a defendant's Sixth Amendment right to counsel when the state deliberately elicits

incriminating statements from a defendant after indictment and in the absence of counsel." *Id.* (citing *Massiah*, 377 U. S. at 206). Respondent contends that "[t]he grand jury had not yet indicted Petitioner when Petitioner made his incriminating statements to Mr. Walker–thus, his Sixth Amendment right to counsel was not violated pursuant to *Massiah*, even assuming Mr. Walker was a state agent and asked Petitioner incriminating questions (which Petitioner fails to prove). *Id.* at 18. Respondent argues that "[e]ven so, Mr. Walker's accredited trial testimony indicates that Petitioner initiated the conversation with Mr. Walker[.]" *Id.* Respondent argues that "Mr. Walker testified that he received nothing in exchange for his testimony, and the record lacks evidence suggesting that Walker colluded with the State to gain incriminating information from Petitioner after Petitioner's indictment." *Id.* (citing Docket No. 31-8, p. 35). Respondent concludes "[t]he claim should be dismissed without being addressed." *Id.*

In response to Petitioner's ineffective assistance claim, Respondent contends that Petitioner's claim "lacks substantiality[.]" Docket No. 57, p. 34. Respondent argues that "trial counsel did not provide deficient performance and Petitioner suffered no prejudice." *Id.* Respondent also contends that "Petitioner cannot succeed on a Fifth Amendment claim because he suffered no violation of his right against self-incrimination[.]" *Id.* Respondent concludes that "[t]he claim should be dismissed as unsubstantial pursuant to *Martinez*." *Id.*

Under *Miranda v. Arizona*, the Fifth Amendment prevents a state from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U. S. 436, 444 (1966). A person is in custody for purposes of *Miranda* when "there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U. S. 318, 322 (1994) (quoting

*California v. Beheler*, 463 U. S. 1121, 1125 (1983)). "'[I]nterrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U. S. 291, 301 (1980). The protections of the Fifth Amendment in interrogations do not extend to interrogations by individuals not known to be affiliated with law enforcement, such as undercover agents. *See Illinois v. Perkins*, 496 U. S. 292, 300 (1990) (holding that "an undercover law enforcement officer posing as a fellow inmate need not give Miranda warnings to an incarcerated suspect before asking questions that may elicit an incriminating response.").

Additionally, the Sixth Amendment guarantees criminal defendants the right "to have the Assistance of Counsel for his defence." U. S. Const. amend. VI. The Sixth Amendment's protection attaches "once the adversary judicial process has been initiated" against the defendant. *Montejo v. Louisiana*, 556 U. S. 778, 786 (2009). Once attached, the defendant has a right to counsel present at all 'critical' stages of the criminal proceedings," including interrogations. *Id.* (citations omitted). The protection afforded by the Sixth Amendment is violated when the State uses "against him at his trial evidence of his own incriminating words . . . deliberately elicited from him after he had been indicted and in the absence of counsel." *Massiah*, 377 U. S. at 206. "The right to counsel applies not only to direct confrontations by known government officers, but also to '*indirect and surreptitious interrogations*' by covert government agents and informants." *Ayers v. Hudson*, 623 F. 3d 301, 309 (6th Cir. 2010) (emphasis original). In order to show a violation of the right to counsel in this context, a petitioner "must demonstrate that the police and their informant took some action, beyond merely listening, that was designed to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U. S. 436, 459 (1986).

29

Petitioner's Fifth Amendment claim would not have entitled Petitioner to relief if raised in state court because there is no indication that witness Adrian Walker interrogated Petitioner. Additionally, Petitioner does not allege that he believed Mr. Walker to be an agent of law enforcement at the time Petitioner incriminated himself. Thus, a claim based on the Fifth Amendment does not have merit based on Petitioner's allegations.

Petitioner's Sixth Amendment allegation, if raised by trial counsel, also would not have entitled him to relief. Two reasons support this conclusion. First, Petitioner does not cite to any evidence, and the record does not reflect, that Mr. Walker was an agent of law enforcement when he incriminated himself in the absence of counsel. Second, Petitioner does not allege that Mr. Walker interrogated him. Petitioner cannot show cause under *Martinez* or *Edwards*. Therefore, Petitioner cannot prove cause under *Martinez* or *Edwards*. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

> g. **Amended Petition Paragraphs 6, 16c, 16d, 16e, and 16g – Victim's Identification of Petitioner as Attacker, and Ineffectiveness for Failing to Object, Investigate, and Present Evidence to Negate Identification**

Petitioner contends in his Amended Petition that his Fourteenth Amendment Due Process right was violated by "Crystal McKee's courtroom identification of Petitioner as the assailant" because it was "unreliable and unduly suggestive, especially where Ms. McKee was under the influence of cocaine or other drugs at the time of the offense, she admitted to Kendall Jordan that she was 'so messed up' she couldn't identify who committed the offense, she told officers at the scene that she could not identify the assailant's clothing, and the courtroom atmosphere was inherently and unduly suggestive, leading to an unreliable and improper identification of Petitioner at trial as the assailant." Docket No. 46, p. 6. Relatedly, Petitioner argues that his trial counsel

was ineffective for failing to: (1) obtain medical records of Crystal McKee and cross examine her with them to negate her identification of Petitioner as her attacker [16c] (Docket No. 46, pp. 10-11); (2) investigate and present evidence from Kendall Jordan that would have negated Crystal McKee's identification of Petitioner [16d] (*Id.* at 11); investigate and present evidence of statements from Crystal McKee and other evidence regarding her drug use that would negate her identification of Petitioner [16e] (*Id.* at 11-12); and (4) obtain an expert witness to opine as to Crystal McKee's ability to identify Petitioner while under the influence of drugs [16g] (*Id.* at 13-14).

In relation to the underlying suggestive identification claim, Respondent argues in his Answer that "Petitioner's defaulted claim falls flat as he cannot prove actual prejudice as this claim essentially constitutes an alleged state evidentiary error, which is not cognizable on habeas review." Docket No. 57, p. 18 (citing 28 U. S. C. § 2254(a); *Pulley v. Harris*, 465 U. S. 37, 41 (1984). Respondent asserts that "the defaulted claim is not based on any federal constitutional provision, which bars its review." *Id.* Respondent also contends that "even if this claim did constitute a federal constitutional claim, it still would not have established prejudice." *Id.* Respondent argues "McKee's identification of Petitioner as the assailant did not violate Petitioner's due process rights." *Id.* at 19. Respondent argues that "McKee had ample opportunity to view Petitioner; she described Petitioner's assault on Ms. Malone in graphic detail, noting that Petitioner was smiling as he killed Ms. Malone and that she stood only two feet away from where Petitioner was murdering Ms. Malone." *Id.* (citing Docket No. 31-7, pp. 139-40, 143). Respondent states that Petitioner "attacked McKee, stabbing her multiple times at close range." *Id.* (citing Docket No. 31-7, pp. 139-40, 144). Respondent further states that "when McKee fled from Petitioner, Petitioner continued to follow McKee prior to fleeing the scene." *Id.* (citing Docket

No. 31-7, pp. 139-40). Respondent argues that "McKee's identification was reliable and thus did not violate due process as Petitioner attempts to claim." *Id.*

Respondent further argues that "[r]egarding Petitioner's contention about Kendall Jordan, the state courts did not accredit Mr. Jordan's testimony; indeed, the state courts found that Jordan's lack of specificity and detail in his testimony rendered him a poor witness." *Id.* Respondent concludes, "Petitioner is not entitled to present this claim to the Court due to his default, and the claim should be dismissed with prejudice." *Id.*

In regard to Petitioner's ineffective-assistance-of-counsel-arguments, Respondent contends: (1) [16c] this Court cannot review the claim because he litigated it in the post-conviction court but failed to appeal the denial of that relief to the Tennessee Court of Criminal Appeals (*Id.* at 29); (2) [16d] the claim is insubstantial because the state court record demonstrates Kendal Jordan's testimony would have been unhelpful to the defense (*Id.* at 30); (3) [16e] this Court cannot review the claim because he litigated it in the post-conviction court but failed to appeal the denial of that relief to the Tennessee Court of Criminal Appeals (*Id.* at 30); and (4) [16g] the claim is insubstantial because, despite expert testimony, "McKee knew Petitioner prior to the incident, and her identification was precise, especially considering that Petitioner stabbed McKee at close range." (*Id.* at 31-32).

Respondent argues that even if, as Petitioner contends, "the medical records would have shown that Ms. McKee said that he 'assailants are unknown[,]'" "the jury heard the 911 recording in which McKee said that she did not know the identity of the person who stabbed her." Docket No. 87 at 10. Respondent states that "[t]rial Counsel emphasized this point for the jury in closing arguments, calling her identification of Petitioner into question because she told the 911 operator that she did not know who stabbed her." *Id.* (citing Docket No. 31-12, pp. 89-90).

Respondent acknowledges Petitioner's argument that "the medical records would have shown that Ms. McKee was under the influence of crack cocaine at the time of the offenses," but contends that Petitioner "does not cite to any portion of the medical records in support of this proposition." *Id.* (citing Docket No. 86, p. 7). Respondent also argues that "the jury was fully aware of the fact that Ms. McKee had used crack cocaine on the day of the crimes, as she admitted on both direct and cross-examination to using crack cocaine with the victim." *Id.* (Docket No. 31-7, pp. 134, 163). Respondent argues that, despite being granted discovery on this issue, "Petitioner has not presented the Court with any additional evidence of Ms. McKee's usage of crack cocaine, nor does he identify the proof he would adduce at an evidentiary hearing in support of this claim." *Id.* (citing Docket No. 75, 12-13). Respondent contends that "[t]his claim is simply a bald and conclusory allegation, which is insufficient to warrant an evidentiary hearing." *Id.* (citation omitted). Respondent concludes that "this Court should deny the motion as to Claims 16c and 16e." *Id.*

In relation to Petitioner's claim 16c, Petitioner litigated this claim in the initial post-conviction proceedings. Docket No. 31-26, pp. 62-63. Petitioner failed to appeal the denial of this claim. *See* Docket No. 31-33. The Court may not consider this claim. *See Middlebrooks*, 843 F. 3d at 1136 ("Our determination of whether the *Martinez-Trevino* rule applies depends on proceedings in the state trial court on its initial post-conviction review, and does not extend to appeals from initial review collateral proceedings.") (quotations omitted).

As to Petitioner's claim 16e, the record reflects that Petitioner's argument at post-conviction was that his counsel failed to "attempt to preclude Mr. McKee's identification," not that he failed to investigate the underlying statements. Docket No. 31-26, p. 53. The analysis conducted by the post-conviction court reflects that understanding of Petitioner's claim. *See*

Docket No. 31-26, pp. 87-89.

Petitioner is not able to establish prejudice under *Strickland* because the victim identified Petitioner as the attacker despite being under the influence of drugs. Considering the evidence against Petitioner at trial, Petitioner also fails to establish prejudice to excuse default because he cannot show such testimony would have changed the outcome of the proceeding.

The state court record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. The admission of questionable pretrial identifications at trial can violate Due Process only when law enforcement misconduct is involved. *See Perry v. New Hampshire*, 565 U. S. 228, 245 (2012) ("The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."). The record does not reflect, nor does Petitioner allege, that the State engaged in any misconduct related to Ms. McKee's identification of Petitioner.

Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### h. Amended Petition Paragraphs 7, 16o, and 16s – Failure to Issue Alibi Jury Instruction and Ineffective Assistance of Counsel

Petitioner next argues that his Fourteenth Amendment Due Process right was violated when the trial court "denied an instruction on alibi even though that was his theory of defense (including instruction on legal principles of alibi as well as the fact that this was the defense theory and explaining alibi as it related to the facts), he was required to provide notice of alibi before trial, and where evidence at trial from Petitioner, Brook Lee Antonio Turentine, and even Columbia Police Department Sergeant Cash, who testified that Petitioner told him that he was at home and went to sleep around midnight and left for work at 5:30a.m. or 6:00a.m. , . . but the offenses

34

occurred elsewhere around 3:30a.m. to 4:00a.m." Docket No. 46, p. 6. (internal citation omitted). Petitioner claims that he received ineffective assistance of trial counsel when "Counsel did not personally interview Brook Lee and Antonio Turentine to clarify their information about Petitioner's alibi, thus failed to present fully accurate testimony about Petitioner's alibi at trial, and also failed to present and argue all available evidence of alibi showing that Petitioner was at his apartment at the time of the assault." Docket No. 46, p. 16. Petitioner also claims that his counsel was ineffective by failing to object on the basis that the trial court did not issue an alibi instruction. *Id.* at 17.

Respondent contends in his Amended Answer that "Petitioner defaulted the claim by failing to fairly present a claim based in federal law throughout state litigation of the issue." Docket No. 57, p. 19. Respondent argues "Petitioner utterly failed to fairly present a federal constitutional claim to the state courts on direct appeal." *Id.* at 20. Respondent asserts that "Petitioner defaulted the claim" and "cannot excuse the default because he failed to plead any cause and prejudice." *Id.* Respondent also contends that "[e]ven if Petitioner pled prejudice, he still could not excuse the default because he cannot prove that the state appellate court's decision unreasonably applied federal law or unreasonably applied the facts." *Id.* Respondent states that "[t]rial testimony failed to corroborate Petitioner's alibi." *Id.* (citing Docket No. 31-23, p. 17). Respondent argues, "[t]hus, even if a federal constitutional claim was fully and fairly presented to the state courts, Petitioner would still not be entitled to relief pursuant to AEDPA." *Id.* Respondent concludes, "[t]he claim is defaulted and otherwise without merit." *Id.*

A petitioner cannot establish grounds for habeas relief based on a state court's jury instruction unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U. S. 145, 154 (1977) (quoting *Cupp*,

414 U. S. at 147). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

As an initial matter, Petitioner procedurally defaulted claim 7 because he did not raise a federal claim throughout his litigation in state court on the issue of his alibi. *See Slaughter v. Parker*, 450 F. 3d 224, 236 (6th Cir. 2006) (holding that a petitioner defaulted a claim otherwise litigated in state court despite citing the 14th and 6th amendments because he did not "fairly raise" the claim.).

The state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. The Tennessee Court of Criminal Appeals considered the facts underlying Petitioner's claim on direct appeal from his conviction. *See State v. Dodson*, 2012 WL 2403624, at *12-13. Even considering Petitioner's allegations that his trial attorney failed to properly investigate, Ms. Lee and Mr. Turentine both testified about their knowledge related to Petitioner's alibi at trial. *State v. Dodson*, 2012 WL 2403624, at *6, *7. Petitioner fails to demonstrate how the error, even if meritorious, changed the outcome of his trial. *See Jones*, 801 F. 3d at 563. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### i. Amended Petition Paragraph 8 – Prosecutorial Misconduct in Closing Argument

Petitioner next argues that his Fourteenth Amendment Due Process right was violated when "the prosecution at closing argument made inflammatory, false, misleading, and/or improper arguments that denied Petitioner a fair trial, including, but not limited to arguments that: an unfair and inflammatory statement that the defense was 'dragging bloody rags across the trails of justice;' Petitioner's clothes were lost in a dumpster; Petitioner 'bragged' to Adrian Walker that the state had no proof against him; Petitioner 'bragged' to Walker about harming the victims; Walker was

'not happy' to hear about the victims' injuries; Petitioner put the victim on the flood like a piece of garbage; Petitioner talked to people after he allegedly lost his phone." Docket No. 46, p. 6-7.

Respondent contends in his Amended Answer that "Petitioner defaulted this claim because he failed to object at trial." Docket No. 57, p. 20. Respondent states that "[a] state's contemporaneous objection rule constitutes an adequate and independent state-law ground to prevent direct review." *Id.* at 20-21 (citation omitted). Respondent states, "[t]he state appellate court invoked Tennessee Rule of Appellate Procedure 36(b) to bar completed review of the claim." *Id.* (citing Docket No. 31-23, pp. 23-24; *Webb v. Parris*, No. 3:14-cv-1548, 2014 WL 5465340, at *10-13 (M.D. Tenn. Oct. 28, 2014)). Respondent contends that "the claim is defaulted." *Id.* Respondent concludes that "Petitioner defaulted this claim through waiver and suffered no prejudice," so "the Court should find the claim procedurally barred and deny relief." *Id.*

Additionally, Respondent states that the state appellate court "reviewed the claim under Tennessee's plain-error analysis and concluded that no plain error occurred." *Id.* (citing Docket No. 31-23, pp. 24-25). Respondent concludes that "there is no 'adequate and independent' state ground precluding federal habeas review." *Id.* (citing *Douglas v. Workman*, 560 F. 3d 1156, 1177-78 (10th Cir. 2009)).

In his Reply, Petitioner also asserts that this claim "is not procedurally defaulted as Respondent has alleged . . . because the state court's 'plain error' review on this claim on direct appeal means that the denial of relief was not "independent" of federal law." Docket No. 62, p. 12 (citation omitted).

As an initial matter, Petitioner and Respondent disagree as to whether this claim is procedurally defaulted considering the plain error review conducted by the state appellate court. Plain error review by a state appellate court "does not constitute a waiver of state procedural default

rules." *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F. 2d 281, 284-85 (6th Cir. 1989)). Thus, Petitioner's claim is procedurally defaulted.

In determining whether comments made during closing argument denied a petitioner the right to a fair trial, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U. S. 168, 181 (1986), *quoting Donnelly v. DeChristoforo*, 416 U. S. 637, 643 (1974). The standard of review for such a question before a habeas court is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (internal quotation marks omitted). The *Darden* standard "is a very general one" that leaves courts "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U. S. 37, 48 (2012); *see also Yarborough v. Alvarado*, 541 U. S. 652, 664 (2004).

The prosecutor in *Darden* asked the jury to "give [the defendant] death" because "[t]hat's the only way that I know that he is not going to get out on the public." 477 U. S. at 180 n. 10. The prosecutor referred to the defendant as an "animal," and stated "I wish that I could see him sitting here with no face, blown away by a shotgun." *Id.* at 180 nn. 11-12. Even though these comments "undoubtedly were improper," the Court still found that "they did not deprive the petitioner of a fair trial" in light of the district court's curative jury instructions, the overall weight of the evidence, and the effectiveness of defense counsel's rebuttal. *Id.* at 180-82.

The state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. The transcript produced reflects the entirety of the prosecution's argument made at trial. *See* Docket No. 31-12, pp. 72-85. Petitioner's allegations are conclusory. Petitioner also fails to demonstrate how the error, even if meritorious, changed the outcome of his trial. *See Jones*, 801 F. 3d at 563. Petitioner has failed to establish a constitutional

violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### j. Amended Petition Paragraphs 10 and 16l – Admission of Evidence that Petitioner Allegedly Sold Crack Cocaine; Ineffective Assistance of Counsel for Failure to Object

Petitioner next argues that the trial court violated Petitioner's Fourteenth Amendment Due Process right when it "allowed the admission of evidence of Petitioner's alleged sale of crack cocaine . . . which the jury was able to use as a substantive evidence of wrongdoing and guilt here, without any limiting or cautionary instruction that such evidence either was not properly admitted at all, or could only be used to impeach Brook Lee." Docket No. 46, p. 7(citing Docket No. 31-12, p. 50). Petitioner also argues that he received ineffective assistance of counsel when his trial attorney "failed to object, as a violation of due process under the Fourteenth Amendment and state law, that the trial court improperly allowed the admission of evidence of Petitioner's alleged sale of crack cocaine . . . which the jury was able to use as substantive evidence of wrongdoing and guilt here and/or counsel failed to ensure that the judge provide a limiting or cautionary instruction that such evidence either was not properly admitted at all and had to be disregarded, or could only be used to impeach Brook Lee." *Id.* at 16.

Respondent states that "Petitioner concedes that this error is one based in state evidentiary law, which is not cognizable on habeas review." Docket No. 57, p. 21 (citing Docket No. 46, p. 7; 28 U. S. C. § 2254(a); *Pulley*, 465 U. S. at 41; *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003)). Respondent contends that "Petitioner does not argue how this alleged state evidentiary error rises to the level of a due process violation besides badly speculating that the jury used the evidence to prove Petitioner's guilt." *Id.* (citing Docket No. 46, p. 7). Respondent further contends that "based on the record, 'overwhelming' evidence demonstrated Petitioner's guilt of the

underlying offenses; thus, the evidentiary ruling was not 'so egregious that it resulted in a denial of fundamental fairness.'" *Id.* (quoting Docket No. 31-23, p. 17; *Bugh*, 329 F. 3d at 512). Respondent argues that "[t]he state evidentiary claim that also constitutes a mere conclusory allegation should be dismissed without this Court's address." *Id.* at 22. In response to Petitioner's ineffective assistance claim, Respondent contends that Petitioner's claim "lacks substantiality" because "[t]rial counsel did not deficiently perform, and Petitioner suffered no prejudice." *Id.* at 34. Petitioner argues that the trial court's admitting of the evidence "was proper" and that "Petitioner cannot show that this admission unreasonably applied clearly established federal law." *Id.* at 34-35 (citing Tenn. R. Evid. 613(b)).

At Petitioner's trial, the following occurred during the State's direct examination of witness Detective Cooper:

> Q. And Detective, you heard Ms. Lee just a moment ago in response to my question about Mr. Dodson and drug dealing?
>
> A. That is correct.
>
> Q What did Ms. Lee tell you about Mr. Dodson and whether or not he sold drugs?
>
> MR. PIERCHOSKI: Objection, the Witness Lee would have said at the police station, Your honor.
> GENERAL COOPER: Your Honor, it was a prior inconsistent statement. I can impeach her testimony with that.
>
> THE COURT: Isn't it that, Mr. Pierchoski? She just testified that she did not say that, under oath.
>
> MR. PIERCHOSKI: Withdraw the objection.
>
> THE COURT: So overruled. Go ahead.
>
> A. He sold crack cocaine.

Docket No. 31-12, pp. 49:16-25 – 50:1-10.

As an initial matter, Petitioner procedurally defaulted claim 10 because he did not raise a federal claim throughout his litigation in state court in reference to the introduced statements. *See Slaughter*, 450 F. 3d at 236. A state court's evidentiary ruling does not provide grounds for habeas relief unless it "is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003) (citations omitted).

The state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. Petitioner's claim is not the type of claim that is ordinarily a ground for habeas relief. *Bugh*, 329 F. 3d at 512. In other words, this claim alleges a defect with the outcome of an evidentiary issue masked in a conclusory allegation that it violated Petitioner's Due Process. *See Bowling*, 344 F. 3d at 512. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### k.    Amended Petition Paragraph 11 – Improper Amendment of Indictment

Petitioner argues that the trial court violated his Sixth Amendment and Fourteenth Amendment Due Process rights by allowing "Counts II and III of the indictment, which originally alleged that the offenses of attempted murder and aggravated assault occurred in Lawrence County, to be amended to allege (without presentation to the grand jury) that such offenses occurred in Maury County." Docket No. 46, p. 7.

Respondent states that "[a]n indictment that fairly but imperfectly informs the accused of the offenses for which he is to be tried does not give rise to a constitutional issue." Docket No. 57, p. 22 (citing *Mira v. Marshall*, 806 F. 2d 636 (6th Cir. 1986); *Hughes v. Carlton*, No. 3:05-120, 2005 WL 3338726, at *6 (M.D. Tenn. Dec. 8, 2005). Respondent argues that "[t]his claim is one based in state law, specifically Tennessee criminal procedure." *Id.* (citing Docket No. 31-23, pp.

12-13). Respondent contends, "[t]hus, the claim is not cognizable on habeas review." *Id.* Respondent states that "the state appellate court examined the claim under Tennessee law and correctly decided that no error occurred." *Id.* (citing Docket No. 31-23, pp. 12-13). Respondent argues that "the claim constitutes a perceived state-law error that is not cognizable on habeas review," and "[t]he claim should be dismissed with prejudice." *Id.*

"[D]ue process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams v. Haviland*, 467 F. 3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F. 2d 365, 369 (6th Cir. 1984)); *see also In Re Ruffalo*, 390 U. S. 544 (1968). Fair notice "requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged" and "will enable a presumptively innocent man to prepare for trial." *Koontz*, 731 F. 2d at 369 (citing *Combs v. Tennessee*, 530 F. 2d 695, 698 (1976)).

The state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. The Tennessee Court of Criminal Appeals considered the facts underlying Petitioner's habeas claim on direct appeal. *See State v. Dodson*, 2012 WL 2403624, at *9-10. Petitioner does not explain how the indictment incorrectly listing the location of two of three charged offenses resulted in a lack of fair notice. There is no indication that the Tennessee Court of Criminal Appeals' decision to follow its procedural rules to affirm the trial court's decision violated Petitioner's Due Process right.

Additionally, it appears that the Tennessee Court of Criminal Appeals determined that Petitioner waived the argument by failing to bring it at the proper time (*State v. Dodson*, 2012 WL 2403624, at *10). The undersigned considers this claim procedurally defaulted. *See Phillips v. Houk*, 587 F. App'x 868, 871 (6th Cir. 2014) ("Where a state court denies a claim as waived, the

42

claim is procedurally defaulted and the federal court may not review the claim absent a showing of cause and prejudice") (quoting *Cone*, 556 U. S. at 466-69).  Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### l.      Amended Petition Paragraph 13 – Introduction of Prior Convictions

Petitioner next argues that the trial court violated his Fourteenth Amendment Due Process right when it allowed the prosecution to introduce "evidence of Petitioner's prior convictions for aggravated assault in 1999 that prejudiced the jury against Petitioner."  Docket No. 46, p. 8.

Respondent contends that "this claim is not cognizable on habeas review."  Docket No. 57, p. 22.  Respondent first states that Petitioner's "claim is based in state evidentiary law, which does not allege a violation of" federal law.  *Id.* (citations omitted).  Additionally, Respondent argues that "Petitioner only offers mere speculation that the jury was prejudiced against him."  *Id.* at 23. Respondent argues "this evidentiary allegation does [not] offend the concept of fundamental fairness to warrant habeas relief." [*sic*]  *Id.*  Respondent concludes that "[t]he claim should be dismissed as non-cognizable."  *Id.*

At Petitioner's trial, the trial court admitted evidence of Petitioner's prior convictions for impeachment purposes after Petitioner testified that he was not the type of person to commit the violent offenses at issue.  *See* Docket No. 31-12, pp. 10:14-25 – 15:1-13.  The Tennessee Court of Criminal Appeals analyzed the issue on direct appeal utilizing state evidentiary grounds. *See State v. Dodson*, 2012 WL 2403624, at *15-17.

Petitioner's claim is not the type of claim that is ordinarily a ground for habeas relief. *Bugh*, 329 F. 3d at 512.  In other words, this claim alleges a defect with the outcome of an evidentiary issue masked in a conclusory allegation that it violated Petitioner's Due Process. *See Bowling*, 344

F. 3d at 512. The state court's record is also sufficient to determine the merits of Petitioner's claim without a hearing. *See Schriro*, 550 U. S. at 474. More importantly, Petitioner did not fairly raise a violation of federal law in state court by only litigating the issue on state evidentiary grounds. *See* Docket No. 31-20, pp. 22-25; *see also State v. Dodson*, 2012 WL 2403624, at *15-17. Accordingly, this Court may not consider his claim because he has not demonstrated he can overcome procedural default. *See Slaughter*, 450 F. 3d at 236. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

> **m.    Amended Petition Paragraph 14 – Right to Present a Complete Defense; Failure to admit evidence of Voice Stress Test**

Petitioner next argues that the trial violated his Due Process right and "the right to present a complete defense under the Sixth and Fourteenth Amendments" by excluding "a voice stress test of defense witness Brooke Lee . . . which established her credibility and the viability of Petitioner's defense." Docket No. 46, p. 8 (citing Docket No. 31-11, p. 94). Petitioner does not make any specific allegation of ineffective assistance of counsel related this ground in his Amended Petition despite later invoking *Martinez* and *Edwards* generally in his Reply to establish cause to overcome procedural default. *See generally* Docket No. 46, p. 10-17

Respondent argues that Petitioner "fails to plead any sufficient cause and actual prejudice to excuse the default." Docket No. 57, p. 23. Respondent also argues that Petitioner's argument is "conclusory" such that it cannot excuse procedural default or provide a "basis for habeas relief." *Id.* (citation omitted). Respondent contends "Petitioner did not suffer prejudice because this defaulted claim amounts to an alleged state evidentiary error rather than a federal constitutional error." *Id.* (citations omitted). Respondent argues that the denial of Petitioner's ability to present this evidence "does not offend the concept of fundamental fairness" because "Brook Lee's

44

testimony did not corroborate the alibi defense" and "the evidence of Petitioner's guilt was 'overwhelming.'" *Id.* (quoting Docket No. 31-23, pp. 16-17).  Respondent concludes that "[t]he claim should be dismissed as defaulted." *Id.*

A state court's evidentiary ruling does not provide grounds for habeas relief unless it "is so egregious that it results in a denial of fundamental fairness." *Bugh*, 329 F. 3d at 512.  The trial court denied Petitioner's request to admit evidence of a voice stress test conduct by law enforcement on defense witness Brooke Lee after concluding that case law contradicted Petitioner's assertion that the trial court should allow it.  *See* Docket No. 31-11, pp. 90-94.

The state record is sufficient to determine the merits of Petitioner's claims without a hearing.  *See Schriro*, 550 U. S. at 474. There is no clearly established federal law that suggests the failure to admit a voice stress test violates a petitioner's Due Process right.  Further, Petitioner does not suggest in any way that the state court's adjudication of his claim was even inconsistent with state law.  Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### n. Amended Petition Paragraphs 15 and 16b– Discrimination in Grand Jury foreperson position and Grand Jury; Ineffective Assistance of Trial Counsel for Failure to Challenge Discrimination

Petitioner next argues that "[i]n violation of the Sixth and Fourteenth Amendments, Petitioner was indicted by a grand jury from which African-Americans and Hispanics were systematically underrepresented and/or excluded, including as foreperson and for which women had also been excluded as foreperson for many years before Petitioner's indictment[.]"  Docket No. 46, p. 8.  Petitioner also contends that his trial counsel was ineffective for failing to challenge discrimination in the Grand Jury Foreperson and Grand Jury itself.  *Id.* at 10.

Respondent asserts in his Amended Answer that "Petitioner is not entitled to any relief

45

based" on his claims regarding the grand jury foreperson. Docket No. 57, p. 24. Respondent contends that "Petitioner cannot successfully maintain a federal due process claim regarding gender or race" because "'[d]iscrimination in the selection of grand jury foreman . . . does not in any sense threaten the interests of the defendant protected by the Due Process Clause.'" *Id.* (quoting *Hobby v. United States*, 468 U. S. 339, 344 (1984)). Thus, Respondent argues that "Petitioner cannot establish any prejudice to excuse this default on his due process claim." *Id.*

In terms of Petitioner's equal protection claim, Respondent contends that "Petitioner does not possess standing to assert this claim regarding Hispanics and women." *Id.* Respondent states that "[t]o show an equal-protection violation has occurred in the context of the selection of the grand jury foreperson, the petitioner must show that the procedure resulted in substantial underrepresentation 'of the identifiable group to which he belongs.'" *Id.* (citing *Castaneda v. Partida*, 430 U. S. 482, 494 (1977); *Sheffield v. Lack*, 702 F. Supp. 634, 636 (M.D. Tenn 1987), *aff'd*, No. 88-5459, 1988 WL 121252, at *1 (6th Cir. Nov. 15, 1988)) (quotations original / emphasis original). Respondent contends that "Petitioner . . . lacks standing to challenge the exclusion of females and Hispanics from serving as the grand jury foreperson" because his is "an African-American male[.]" *Id.* Respondent further contends that Petitioner's allegations in relation to the exclusion of African-Americans from service as foreperson is "a conclusory allegation of constitutional error, which cannot form the basis for habeas relief or the basis of prejudice to excuse the procedural default." *Id.* (citation omitted).

Respondent next contends in relation to Petitioner's "fair cross-section claim" that Petitioner "cannot demonstrate prejudice." *Id.* at 25. Respondent states, "[t]he Supreme Court has never allowed defendants to challenge the composition of their grand juries based on the Sixth Amendment." *Id.* (citing *Henley v. Bell*, 487 F. 3d 379, 387 (6th Cir. 2007)). Respondent concludes

46

that "Petitioner cannot establish a violation of the federal constitution based on a fair-cross section complaint for either the grand jury or the foreperson." *Id.*

In terms of the merits of Petitioner's claims "regarding the grand jury itself." Respondent argues that "Petitioner fails to advance any evidence of systemic exclusion of the groups at issue." *Id.* Respondent argues that "Petitioner's conclusory assertions based on factual allegations concerning the foreperson is insufficient to plead an entitlement to habeas relief." *Id.* Respondent concludes that "the claim should be dismissed without being addressed." *Id.* Finally, Respondent contends that Petitioner's ineffective assistance of trial counsel claim is insubstantial. *Id.* at 29.

In his Motion for an Evidentiary Hearing, Petitioner argued "*Martinez* excuses default of Mr. Dodson's substantial claims regarding the grand jury foreperson . . . under *Rose v. Mitchell*, 443 U. S. 545 (1979)." Docket No. 86, p. 4. According to Petitioner, he demonstrated in his pleadings an entitlement to relief "where women, African-Americans, and Hispanics clearly constituted cognizable groups, yet they were either completely excluded or significantly excluded as foreperson for a decade or more preceding Mr. Dodson's indictment, and the process for selecting the foreperson was governed by Tenn. R. Crim. P. 6(g), which gave unfettered discretion to trial judges to select the foreperson." *Id.* Petitioner states that "[i]n this case, that discretion was exercised so that Mr. Baker was continually reappointed as grand jury foreman starting in 2002 (thereby excluding women), while African-Americans and Hispanics were completely excluded as foreperson from 1994 onward. *Id.* at 4-5.

Petitioner states that "it had been nearly seven years since a woman had served as foreperson, when a women should have served as foreperson for at least approximately three of those seven years." *Id.* at 5. Petitioner also states that "no African-American individuals had been foreperson for any of those years," when "an African-American should have been foreperson for

47

approximately one year of those six." *Id.* Finally, Petitioner states that "there had been no Hispanic foreperson for at least six years preceding the indictment, and no Hispanic male was foreperson." *Id.* "Consequently," Petitioner contends, "there was unconstitutional underrepresentation and systematic exclusion of African-Americans (male and female), Hispanics (male and female) and women as foreperson in the grand jury." *Id.* Petitioner argues that he has made a showing of entitlement "to an evidentiary hearing" and "his entitlement to relief on the merits." *Id.* Petitioner argues that "[u]nder *Strickland v. Washington*, 466 U. S. 688 (1984), trial counsel was therefore ineffective in failing to challenge the selection of the grand jury foreperson." *Id.* at 6. Petitioner further contends that he is entitled to an evidentiary hearing because he "easily establishes cause to overcome the procedural default of his claim that counsel ineffectively failed to challenge discrimination in the selection of the grand jury foreperson." *Id.*

In response to Petitioner's motion for evidentiary hearing, Respondent argued that "Petitioner is not entitled to an evidentiary hearing because this claim is without merit for several reasons." Docket No. 87, p. 6. Respondent argues that, because "the United States Supreme Court has never allowed defendants to challenge the composition of their grand juries based on the Sixth Amendment," (*Id.* (quoting *Henley*, 487 F. 3d at 387)), Petitioner "cannot show that Tennessee courts would have found trial counsel was ineffective for failing to raise a challenge that the Supreme Court has not permitted." *Id.* at 6-7. Respondent states that "the Supreme Court has held that 'discrimination in the selection of the grand jury foremen – as distinguished from discrimination in the selection of the grand jury itself – does not in any sense threaten the interests of the defendant protected by the Due Process Clause." *Id.* at 7 (citation omitted). Respondent argues "Petitioner cannot successfully maintain a federal due process allegation regarding race, and he cannot prevail on a claim that trial counsel was ineffective by failing to raise this argument."

48

*Id.* Respondent also states that "[t]he Tennessee Supreme Court has held that . . . to establish a prima facie equal protection claim, Tennessee defendants must offer proof that racial discrimination tainted the entire grand jury.'" *Id.* (quoting *State v. Bondurant*, 4 S. W. 3d 662, 675 (Tenn. 1999). Respondent contends that "Petitioner makes no argument regarding the composition of the grand jury, nor does he identify any evidence that racial discrimination tainted the entire grand jury pool." *Id.*

A criminal defendant's Equal Protection right is "denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded." *Rose v. Mitchell*, 443 U. S. 545, 556 (1979). In order to substantiate a claim under the Equal Protection Clause, "the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda v. Partida*, 430 U. S. 482, 494 (1977); *see United States v. Miller*, 562 F. App'x 272, 279 (6th Cir. 2014).

The state record is sufficient to determine the merits of Petitioner's claim without a hearing. *See Schriro*, 550 U. S. at 474. Federal and State Supreme Court precedent directly contradicts Petitioner's contention that discrimination in the Grand Jury foreperson violates Due Process. *See Hobby v. United States*, 468 U. S. 339, 344 (1984)(explaining that "[d]iscrimination in the selection of grand jury foremen—as distinguished from discrimination in the selection of the grand jury itself—does not in any sense threaten the interests of the defendant protected by the Due Process Clause."); *see also State v. Bondurant*, 4 S.W.3d 662, 675 (Tenn. 1999) ("[T]he method of selection of the grand jury foreperson is relevant only to the extent that it affects the racial composition of the entire grand jury."). Further, Petitioner's Grand Jury right argument is meritless because the federal right to a Grand Jury is not incorporated into the Fourteenth Amendment. *See Williams v. Haviland*, 467 F. 3d 527, 532 (6th Cir. 2006)(explaining that the Supreme Court has

49

stated repeatedly "that the Grand Jury Clause of the Fifth Amendment does not apply to the states[.]")(citations omitted). Finally, as to Petitioner's Equal Protection claim, the undersigned finds that Petitioner's has not shown discrimination in the Grand Jury such that his underlying ineffective-assistance-of-trial-counsel claim is substantial.

Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### o.    Amended Petition Paragraph 16 – Remaining Ineffective Assistance of Counsel Claims

#### 1.    16f – Failure to Investigate D.N.A. Evidence and Utilize an Expert

Petitioner alleges that his trial counsel failed to "investigate the forensic and physical evidence[,] . . . including utilizing a D.N.A. expert or conducting an independent D.N.A. analysis." Docket No. 46, pp. 12-13. In his Reply, Petitioner contends that his defaulted claim is "substantial, but will require disclosure of evidence and testing of evidence before [he] can show the substantiality of his claim and its merit." Docket No. 62, p. 8.

Respondent contends that Petitioner's underlying ineffectiveness claim is unsubstantial because he "cannot prove that he was prejudiced by trial counsel's alleged deficient performance." Docket No. 57, p. 31.

The state record is sufficient to determine the merits of Petitioner's claim without a hearing. *See Schriro*, 550 U. S. at 474. Petitioner's allegations do not indicate the underlying ineffective-assistant-of-trial-counsel claim is substantial. The undersigned allowed Petitioner discovery as to the cigarette butts and samples taken from door handles. *See* Docket No. 75, p. 16. Despite this discovery, Petitioner's allegations remain conclusory. Further, the effect this evidence would have had on the outcome of his trial is significantly mitigated by the identification made by the surviving witness with prior knowledge of Petitioner. *See State v. Dodson*, 2012 WL 2403624, at *3.

Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### 2. Claim 16h- Failure to properly cross examine Adrian Walker

Petitioner alleges that trial counsel failed to "properly, fully and effectively" cross examine witness Adrian Walker. Docket No. 46, p. 14. Specifically, Petitioner asserts that counsel failed to establish Walker's testimony was "untrue, misleading and/or given in exchange for consideration or expected consideration." *Id.*

Respondent asserts that Petitioner cannot establish any substantiality to excuse default under *Strickland*, nor can he establish prejudice under *Strickland.* Docket No. 57, p. 32. Respondent contends that the testimony of Crystal McKee was "overwhelming" according to the Court of Criminal Appeals and thus Petitioner cannot establish prejudice for his underlying defaulted ineffective assistance claim which should therefore be dismissed. *Id.*

Adrian Walker was not a surprise witness in this case. Petitioner's counsel was well aware of Mr. Walker and undertook to investigate Mr. Walker as a witness including utilizing a private investigator to explore the testimony of Mr. Walker. The decisions regarding the cross examination of Mr. Walker were tactical decision made by an informed trial counsel who had adequately investigated Mr. Walker's anticipated testimony and was aware of the other significant evidence facing Petitioner. The Court cannot say that Petitioner's counsel was ineffective. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim and the claim is unsubstantial.

### 3. Claim 16n- Failure to Investigate and Present Testimony of Robert Hall

Petitioner alleges that trial counsel was ineffective when he failed to investigate and present Robert Hall as a defense witness. Docket No. 46, p 16. Respondent argues that the claim is not

substantial since trial counsel did investigate Mr. Hall and made a strategic decision not to call him as a witness. Docket No. 57, p. 35.

Trial counsel testified at the post-conviction evidentiary hearing and specifically addressed the potential testimony of Robert Hall. Docket No. 31-28, pp. 167-168. Counsel sent his private investigator to interview Mr. Hall and received a report from the investigator detailing Mr. Hall's information. *Id.* After reviewing the report, counsel indicated that he made a decision not to consider Mr. Hall as a witness. *Id.*

It is clear from the record that trial counsel investigated the potential testimony of Robert Hall and made as strategic decision not to call him as a witness after reviewing the notes of his interview. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim and the claim is unsubstantial.

### 4. Claim 16p- Failure to Present Investigator Chrystal Waltz

Petitioner asserts that counsel was ineffective by failing to present the testimony of Chrystal Waltz[3] regarding witness Adrian Walker's pretrial statements. Docket No. 46, p. 17. Respondent contends that this claim was presented to the post-conviction court but defaulted on post-conviction appellate review and cannot be addressed in the instant proceeding. Docket No. 57, p. 6.

Petitioner presented this claim to the post-conviction court and counsel testified that his decision not to call Investigator Waltz was a strategic decision. Docket No. 31-6, pp. 90-91. The issue was not raised on post-conviction appellate review. Docket No. 31-33. Based on the record, Petitioner cannot establish a constitutional violation or plain error under state law sufficient to find

---

[3] Petitioner mistakenly refers to Ms. Waltz as " Wallace."

actual prejudice to excuse procedural default of this claim.

###### 5.     Claim 16q- Failure to Establish Relevancy of Nicole Falls' Testimony

Petitioner asserts that counsel failed to establish the relevancy of Nicole Falls proposed testimony regarding the identities of persons using the name "Loc" or "Lok" that were relevant to the identity of the assailant. Docket No. 46, p. 17. Respondent again contends that this claim was presented to the post-conviction court but defaulted on post-conviction appellate review. Docket No. 57, pp. 36-37.

This claim was defaulted on post-conviction appellate review. Docket No. 31-33. Whether other individuals were referred to by the nickname "Loc" was addressed through other trial witnesses. Docket No. 31-11, pp. 55-56. The existence of this issue was known to defense counsel and the manner in which it was argued was a strategic decision. Petitioner cannot establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

###### 6.     Claim 16t- Failure to Subpoena Agent Brad Elliott

Petitioner contends that counsel was ineffective by failing to subpoena TBI Agent Brad Elliot to question him about his interview of Adrian Walker and whether Adrian Walker actually received threats. Docket No. 46, p. 17. Respondent contends this claim lacks substantiality because Petitioner suffered no prejudice. Docket No. 57, p. 38.

While the decision to subpoena TBI Agent Elliot was defaulted, the underlying issue regarding the testimony of Adrian Walker and alleged threats he received was addressed on direct appeal by the Court of Criminal Appeals. The Court found that no *Brady* violation occurred because the interview was immaterial to the defense. Docket No. 31-23, pp. 14-16. The Court found the evidence of any threats to be outweighed by the potential prejudice arising out of the

damaging information from Walker's statement about Petitioner. Thus, had trial counsel subpoenaed Agent Elliot to testify, the effect to Petitioner would have been negative. As a result, Petitioner suffered no prejudice as a result of the failure to subpoena Agent Elliot. Petitioner cannot establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

     **p.**     **Amended Petition Paragraph 17 – Ineffective Assistance of Appellate Counsel**

All of Petitioner's ineffective-assistance-of-appellate-counsel claims were not considered as grounds for relief in his state post-conviction petition or on appeal from the denial of his post-conviction relief. *See generally Dodson v. State*, 2015 WL 9488738.

"If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted but are procedurally barred." *Cone v. Bell*, 243 F. 3d 961, 967 (6th Cir. 2001), *rev'd, on other grounds* 535 U. S. 685 (2002) (citing *Coleman*, 501 U. S. at 754). Ineffective assistance of post-conviction counsel does not provide cause to excuse procedural default of ineffective-assistance-of-appellate-counsel claims under *Martinez. Davila*, 137 S. Ct. at 2067.

Petitioner has pursued post-conviction relief without raising any of the ineffective-assistance-of-appellate-counsel claims that he raises in his habeas petition; thus, Petitioner does not any have remedies available to him in state court. *See* Tenn. Code Ann. § 40-30-102 ("[A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred"); *see also Davidson v. Lindamood*, No. 1:14-CV-00161, 2018 WL 1566823, at *20 (M.D. Tenn. Mar. 30, 2018), *report*

*and recommendation adopted*, No. 1:14-CV-00161, 2018 WL 2192110 (M.D. Tenn. May 14, 2018), *certificate of appealability denied*, No. 18-5593, 2018 WL 6431035 (6th Cir. Dec. 3, 2018). Petitioner's ineffective-assistance-of-appellate-counsel claims are procedurally defaulted. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### q. Amended Petition Paragraphs 18 and 16r – Competency to Stand Trial and Failure to Request Competency Hearing

Petitioner next argues that "Petitioner was not competent to stand trial, in that he lacked sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and/or lacked a rational or factual understanding of the proceedings against him and counsel failed to fully investigate and present evidence of Petitioner's competency and mental health and mental state and existence of brain dysfunction, and history of auditory hallucinations, especially as those factors relate to and showed the lack of *mens rea* for first-degree murder, and Petitioner was prejudiced thereby, in violation of the Sixth Amendment." Docket No. 46, p. 21 (emphasis original). Petitioner also claims that he received ineffective assistance of trial counsel when "Counsel failed to seek a competency hearing for Petitioner despite potential behavioral signs and statements by Petitioner indicating that Petitioner lacked competency to stand trial, including a history of hallucinations." *Id.* at 17.

Respondent contends that Petitioner's argument on this ground is without merit because "the record contradicts Petitioner's contentions." Docket No. 57, page 25. Respondent states that "a review of the trial court technical record indicates that Petitioner filed numerous *pro se* filings prior to trial, even while represented by trial counsel." *Id.* at 25-26 (citing Docket No. 31-1) (emphasis original). Respondent discusses other conduct engaged in by Petitioner, including playing an active role in his case, speaking to his lawyer, and helping to develop a trial strategy.

*Id.* (citing Docket No. 32-1, p. 12). Respondent contends that Petitioner's claim is meritless, defaulted, and "should be dismissed with prejudice." *Id.* In relation to Petitioner's ineffectiveness claim, Respondent argues that "[t]he claim lacks substantiality because the record shows that Petitioner was competent to stand trial under the *Dusky* standard." *Id.* at 37. Respondent argues that Petitioner's *pro se* filings and assistance given to counsel in his defense "demonstrates Petitioner's competency." *Id.* Respondent contends that "trial counsel did not perform deficiently, and Petitioner suffered no prejudice." *Id.*

The test for determining a petitioner's competency to stand trial is "whether he ha[d] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he ha[d] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U. S. 402, 402 (1960).

The state record is sufficient to determine the merits of Petitioner's claims without a hearing. *See Schriro*, 550 U. S. at 474. The record demonstrates that Petitioner assisted his attorney in preparing for trial, and Petitioner later cogently testified at trial. Nothing from the record supports Petitioner's notion that he lacked competency to stand trial or that his trial counsel was ineffective for not investigating Petitioner's competency. Petitioner's underlying ineffective-assistance-of-trial-counsel claim is not substantial. *See Eley v. Bagley*, 604 F. 3d 958, 966 (6th Cir. 2010) (affirming the denial of habeas relief where the state record revealed Petitioner's testimony was "cogent" and demonstrated "an understanding of his objective" in a pre-trial suppression hearing despite later quoting only Bible verses in the penalty phase of proceedings). Therefore, Petitioner cannot prove cause under *Martinez* or *Edwards*. Petitioner has failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

### r.     Amended Petition Paragraph 20 – Cumulative Error

Petitioner claims that his Fourteenth Amendment Due Process right was violated by "the cumulative effect of all errors at trial and/or on appeal" by "depriv[ing] Petitioner of a fair trial and/or fair appeal whose result was fair and reliable." Docket No. 46, p. 21.  In his Reply, Petitioner cites *Taylor v. Kentucky*, 436 U. S. 478, 478 n.15 (1978) and *Walker v. Engle*, 703 F. 2d 959, 963 (6th Cir. 1983) as support for his contention that cumulative error is a ground for habeas relief. Docket No. 62.

Respondent contends that this claim is procedurally defaulted and is otherwise not a ground for habeas relief.  Docket No. 57, p. 26. Respondent contends that Petitioner "is unentitled to habeas relief on this claim." *Id.*

The law of the Sixth Circuit is that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F. 3d 789, 816 (6th Cir. 2006). "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Keith v. Mitchell*, 455 F. 3d 662, 679 (6th Cir. 2006), *quoting Scott v. Elo*, 302 F. 3d 598, 607 (6th Cir. 2002). Even if this court were to entertain Petitioner's cumulative error claim, the claims underlying this assertion have been shown to be without merit, such that there was no cumulative error, and Petitioner would not be entitled to relief on this claim. *See Keith*, 455 F. 3d at 679 (holding that where the individual claims are all essentially meritless, cumulative error cannot be shown); *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000) (same).

Petitioner incorrectly asserts that because the underlying claims were not adjudicated on the merits in state court, they are entitled to *de novo* review. Docket No. 62, p. 12. As is discussed above, each of the underlying claims were either procedurally defaulted and unexcused (which

excludes them from habeas review), or were properly exhausted and are subject to review under 28 U.S.C. § 2254(d). None of these underlying claims are entitled to *de novo* review.

Petitioner also contends that *Taylor v. Kentucky* supports a claim of cumulative error here, but *Taylor* is inapplicable to the case at bar. *Taylor* involved four separate underlying errors that each had independent merit and cumulatively warranted finding a Fourteenth Amendment violation on direct appeal. *See* 436 U.S. 478, 487-88 (1978). Here, none of Petitioner's underlying claims have been shown to have merit, and the Supreme Court has never permitted the cumulation of multiple constitutional violations to grant relief on habeas review.

Petitioner is therefore not entitled to habeas relief on this claim.

## C.      Petitioner's Exhausted Claims

 Petitioner properly exhausted claims 9, 12 and 16m in the Tennessee state courts. Count 19 of the Amended Petition incorporates all claims raised in his initial uncounseled Habeas petition to ensure no claims are overlooked or not presented for review.

Even when a claim has been properly exhausted, a court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim asserting only a violation of state law, even if properly exhausted, is not cognizable on federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

For the reasons stated below, the undersigned finds that Petitioner's properly exhausted claims do not support granting a writ of habeas corpus.

## 1.      Claim 9- Alleged *Brady* violation concerning the testimony of Adrian Walker

The Petitioner alleges that his Sixth Amendment and due process rights under the

Fourteenth Amendment were violated when the trial court allowed witness, Adrian Walker, to testify about alleged gang activity and where the prosecution failed to disclose an exculpatory interview of Walker by the Tennessee Bureau of Investigation which demonstrated that he had been intimidated by the TBI Agent who allegedly told Walker that she would share personal information about his family with the Petitioner; that Petitioner was affiliated with a gang; and that Petitioner considered Walker to be a snitch. Docket No. 46, p. 7.

The Respondent contends this claim is without merit because it was addressed by the Court of Criminal Appeals on direct appeal and that the decision was not contrary to nor unreasonable application of, *Brady,* or made upon an unreasonable determination of the established facts. Docket No. 33, pp. 38-39.

The Court of Criminal Appeals addressed this argument on direct appeal as follows:

> Tied into these issues, the defendant asserts that the State failed to supply him with exculpatory evidence concerning Walker, specifically evidence of the TBI's interview of Walker on November 20, 2009. He claims that he would have been able to more fully cross examine Walker to impeach his credibility had he been provided the exculpatory evidence.

> In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that the prosecution has a duty to furnish to the defendant exculpatory evidence pertaining either to the accused's guilt or innocence or to the potential punishment that may be imposed. The Court explained that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. In order to establish a *Brady* violation, a defendant must show that he or she requested the information, the State suppressed the information, the information was favorable to his or her defense, and the information was material. *State v. Edgin*, 902 S. W. 2d 387, 389 (Tenn. 1995). Evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. *Edgin*, 902 S. W. 2d at 389.

> At the motion for new trial hearing, the defendant introduced a summary of TBI Agent Brad Elliott's November 20, 2009 interview with Adrian Walker

concerning Walker's interview by an investigator sent by defense counsel the previous day in which Walker was essentially intimidated. In the summary, the TBI agent detailed that Walker reported, among other things, that the investigator showed him that she had personal contact information for Walker's loved ones that she was going to share with the defendant and that the defendant considered Walker "a snitch." The investigator informed Walker that the defendant was affiliated with a gang and that "the defense had a good case until Walker got involved." Walker reported that the investigator asked him if he knew the meaning of the defendant's tattoos: one being that the defendant had committed a homicide, one being that he was a member of the Shotgun Crip gang out of Los Angeles, and one being that he "uses knives up close and personal and allegedly ha[d] stabbed a prison guard before." The aspects of the summary that the defendant alleges as exculpatory are that the investigator asked Walker "about photographs of a dumpster and Walker stated he had no knowledge of that" and because Walker failed to mention that he had been threatened by the Crips gang into writing a letter to the defendant.

Upon review, we question how the TBI summary could be deemed favorable to the defendant or "material," i.e., that there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense, because the summary, as a whole, casts the defendant in a very egregious light. In any event, even if it was error for the State to not disclose the summary, such error was harmless because Walker was thoroughly cross-examined about his knowledge of the dumpster and the vast majority of the TBI summary would have been highly damaging to the defense, beyond any minute benefit that might have been gained in cross-examination.

Docket No. 31-23, pp. 14-16.

The Court of Criminal Appeals reasonably applied *Brady*, holding that the TBI interview was not favorable or material to the Petitioner's guilt or punishment and therefore did not need to be provided under *Brady. Id.* Moreover, the Court found that the "vast majority of the TBI summary would have been highly damaging to the defense, beyond any minute benefit that might have been gained in cross examination." *Id.*

Because the state court's decision was not objectively unreasonable, the Petitioner is not entitled to relief on this claim.

### 2.   Claim 12- Insufficiency of the Evidence

Petitioner submits that there is insufficient evidence to support either of his convictions.

60

Docket No. 46, pp. 8-9.

The Tennessee Court of Criminal Appeals addressed this argument on direct appeal as follows:

> The defendant challenges the sufficiency of the convicting evidence, arguing there is insufficient proof of his identity as the perpetrator of the offenses. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S. W. 2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S. W. 2d 600, 604 (Tenn. Crim. App. 1992).
>
> All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S. W. 2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S. W. 2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:
>
>> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.
>
> *Bolin v. State*, 219 Tenn. 4, 11, 405 S. W. 2d 768, 771 (1966) (*citing Carroll v. State*, 212 Tenn. 464, 370 S. W. 2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S. W. 2d 913, 914 (Tenn. 1982).
>
> The identification of a defendant as the perpetrator of a crime is a question of fact for the trier of fact to determine from the evidence presented at trial. *See State v. Strickland*, 885 S. W. 2d 85, 87 (Tenn. Crim. App. 1993). The identification testimony of the victim is sufficient, alone, to support a conviction. Id.
>
> The reliability of an in-court identification depends on the totality of the

61

circumstances, "including the opportunity of the witness to view the offender at the time of the crime, the witness's degree of attention, the accuracy of the prior description of the offender, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation."

*State v. Lindsey*, 208 S. W. 3d 432, 444 (Tenn. Crim. App. 2006) (*quoting State v. Beal*, 614 S. W. 2d 77, 82 (Tenn. Crim. App. 1981)).

We conclude that the evidence, when viewed in the light most favorable to the State, is sufficient to establish the defendant's identity as the man who stabbed the victim and Crystal McKee. McKee, the surviving victim, testified that, when she came around the corner in response to the victim's screams, she saw a man repeatedly stabbing the victim and then look directly at her before cutting the victim's throat with the knife. The attacker laid the victim down on the floor and moved on to stabbing McKee, who was eventually able to get away and call 911. McKee testified that the attacker's face was uncovered, and she recognized him as "Lok," having seen him on previous occasions at the victim's apartment. Officer Howell, the first officer to arrive on the scene, recalled that McKee reported to her that a man named "Lok" was the attacker. McKee identified the defendant in court as the attacker and person she knew as "Lok." In addition, other testimony and evidence established that the defendant was nicknamed "Lok," that he called the victim in the time frame leading up to her death, and that he shaved off all his hair and facial hair after returning to Lee's apartment the second time that morning. Moreover, Adrian Walker testified that, when he was incarcerated with the defendant, the defendant told him about a situation where two women who owed him $300 "got cut up . . . reasonably bad" and that it was "messed up." We note that any questions concerning McKee's ability to identify the defendant or the credibility of Walker's or any other witnesses' testimony were resolved by the jury as the trier of fact. Based on this evidence, a rational trier of fact could have found the defendant guilty of first degree premeditated murder, attempted first degree murder, and aggravated assault.

Docket No. 31-23, pp. 17-19.

In *Jackson v. Virginia*, the Supreme Court set forth the standard for reviewing the legal

sufficiency of the evidence in support of a conviction:

. . . [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. 307, 318-19 (1979) (internal citations omitted). Upon review, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.* at 319. If any rational trier of fact would accept the evidence as establishing each essential element of the crime beyond a reasonable doubt, the *Jackson* standard of review is satisfied. *Coleman v. Johnson*, 566 U.S. 650, 654 (2012).

*Jackson* claims face a high bar on habeas review in federal court because they are subject to two layers of judicial deference. *Id.* at 651. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (internal quotation marks omitted), *quoting Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.*, *quoting Renico v. Lett*, 559 U.S. 766, 773 (2010).

In viewing the evidence in the light most favorable to the State, the undersigned finds that the Tennessee state courts could conclude that the evidence was sufficient to support Petitioner's conviction. Based on the proof offered at trial, including the testimony of the surviving victim as well as the other testimony and evidence corroborating the victim's identification, the Tennessee Court of Criminal Appeals appropriately held that "a rational trier of fact could have found the Defendant guilty of first-degree premeditated murder, attempted first degree murder, and aggravated assault." Docket No. 31-23, p. 19.

For these reasons, the undersigned finds that decision was not objectively unreasonable.

Petitioner is therefore not entitled to relief on this claim.

### 3. Claim 16m- Ineffective Assistance of Trial Counsel

With regard to claim 16m, Petitioner argues that counsel was ineffective by failing to present testimony of an expert on eyewitness identification who could have challenged the testimony of Crystal McKee as unreliable. Docket No. 46, p. 16.

The Court of Criminal Addressed this issue as follows:

> The Petitioner's remaining claim, which is that trial counsel was ineffective by failing to call Dr. Neuschatz to testify at trial, is equally unavailing. The Petitioner did not produce Dr. Neuschatz to testify at his post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S. W. 2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on the potential benefit this witness might have offered to the Petitioner's case. *Id.* Accordingly, the Petitioner has failed to demonstrate prejudice. Moreover, trial counsel testified that a tactical decision was made not to call the doctor because his testimony could potentially bolster Ms. McKee's identification of the Petitioner. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel"s behavior by "20-20 hindsight." *See State v. Hellard*, 629 S. W .2d 4, 9 (Tenn. 1982). The post-conviction court found that trial counsel's tactical decision was made after thorough preparation for trial. We agree. We conclude that the Petitioner is not entitled to post-conviction relief on this basis.

Docket No. 32-1, pp. 16-17.

Petitioner has failed to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *Id.* There is no evidence Petitioner was prejudiced or that his trial would have reasonably had a different outcome had Dr. Neuschatz testified. *Id.* Further, because that testimony could have bolstered the testimony of Ms. McKee's identification of the Petitioner, it may have actually done more harm than good. Because these considerations were taken into

account by trial counsel, it was clear that the decision not to call the witness was a tactical decision not challengeable upon review. Trial counsel's performance does not satisfy either prong of *Strickland,* and this claim does not warrant habeas relief.

### 4. Claim 19- Incorporated Claims from Initial Petition.

In claim 19, the Petitioner incorporates all claims raised in his initial uncounseled habeas petition "to ensure that no claims are in any way unintentionally overlooked or not presented to this Court for review." Docket No. 46, p. 21. Similarly, Respondent incorporates the arguments from his original answer to the amended answer. Docket No. 57, p. 4.

Apart from the claims addressed herein, the parties have not identified any additional claims for relief originally sought in the uncounseled petition and the Court is not aware of any. Therefore, these claims do not warrant habeas relief.

### III.
### CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22(b) provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is made when "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), *quoting Barefoot v. Estelle*, 463 U.S. 880, 922, n. 4 (1983). Specifically, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Id.*

The undersigned finds that no reasonable jurist would differ on the disposition of this motion, and recommends that a certificate of appealability be denied as to all claims.

## IV. RECOMMENDATION

For the reasons discussed herein, the undersigned recommends that Petitioner's Amended Petition for Writ of Habeas Corpus (Docket No. 46) be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned recommends that a certificate of appealability be **DENIED** as to all claims.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

66